## 23686

Annie BROCK, Benita Howey, Mr. and Mrs. F. M. Duckworth and Mrs. Oma Barnes, Respondents v. BOARD OF ADJUSTMENT AND APPEALS OF the CITY OF ROCK HILL, the City of Rock Hill and Sister Help Program, of which Sister Help Program is Petitioner. Petition of SISTER HELP PROGRAM.

(419 S.E. (2d) 773)

Supreme Court

Mitchell K. Byrd and Dan M. Byrd, Jr. of Byrd & Byrd, Rock Hill, for petitioner.

Robert M. Jones, Rock Hill, for respondents.

Heard May 20, 1991.

Decided July 13, 1992.

FINNEY, Justice:

We granted certiorari to review the reversal of the circuit court by the Court of Appeals which held that the initial permit granted Petitioner Sister Help Program had expired after one year, and that petitioner had not received the four-vote majority required for issuance of a subsequent permit. See Brock v. Board of Adjustment and Appeals of the City of Rock Hill, 302 S.C. 512, 397 S.E. (2d) 253 (S.C. App. 1990). We reverse.

In late 1985, petitioner applied to the City of Rock Hill for utilities hook-up and a permit to renovate one of two residences for use as a shelter for victims of domestic abuse. The Zoning Administrator denied the permit on the ground that shelters were not listed as a permitted use in an RG-0 district, defined as a transitional district between commercial or industrial and a residential area. The petitioner requested administrative review by the Board of Adjustment and Appeals (Board of Adjustment), contending that neither were shelters of the kind proposed shown on a list of uses prohibited in an RG-0 district and that their proposed shelter was similar to boarding houses or rooming houses permitted within the district.

At a meeting on December 10, 1985, the Board of Adjustment reviewed the application and, by a vote of four-to-one, granted the permit for one year during which the Planning Commission and City Council would conduct a review to determine whether and in what districts shelters should be specified in the Code. It was further provided that if, after one year, the Code had been changed to exclude such use in RG-0

areas or if sufficient problems arising from the shelter had caused hardships on the neighbors, the shelter would be required to relocate.

On April 29, 1986, the district in which the shelter was provisionally permitted was rezoned RS-3, a more restrictive residential designation. In January of 1987, the Board of Adjustment postponed a final disposition of the one-year review pending regulatory action by City Council. On January 26, 1987, City Council passed an ordinance defining group homes and designating them "Use Permitted on Review" in districts zoned RG-0 and RS-3. The ordinance also required group home within the districts to be separated by a distance of 3,000 feet. Petitioner's shelter was located 1,650 feet from another group home.

At the February 1987 meeting, disposition of the review was again postponed until March of 1987 when the Board of Adjustment reconsidered the matter and voted on two question: 1) Whether the Code had been changed to exclude group homes from RG-0 districts; and 2) whether there had been sufficient hardships in the neighborhood to require the shelter to move. The vote on each issue was three "yes" and three "no." The Chairman ruled that the Board of Adjustment had failed to make a definitive finding by a majority vote on either question; therefore, the shelter was permitted to remain on the initial site.

The record reflects that prior to the meeting at which the vote was taken, the Board of Adjustment considered complaints of hardships from the neighbors consisting of vehicles occasionally blocking driveways to adjacent dwellings, one instance of the police being called when an unattended infant was inadvertently locked inside the shelter, their concern about the shelter's negative impact on property values, and the potential for violence from relatives and friends of shelter occupants.

Respondents Annie Brock, Benita Howey, Mr. and Mrs. F.M. Duckworth and Mrs. Oma Barnes, residents of the neighborhood in which the shelter is located, petitioned the circuit court for a writ of certiorari pursuant to S.C. Code Ann. § 5-23-150 (1976). Certiorari was granted and after a hearing, the circuit court affirmed the action of the Board of Adjustment based upon the following conclusions:

1. That when the questions were not answered in the affirmative, the relief granted temporarily by a four-to-one vote in December, 1985, became permanent;

2. That the Board of Adjustment acted lawfully, within its discretion, and within its legal authority; and

3. That the conduct of the Board of Adjustment was not arbitrary or clearly erroneous.

Respondent again petitioned for a writ of certiorari. Their exceptions before the Court of Appeals were that the Board of Adjustment and Appeals erred: 1) In reversing the Zoning Administrator's decision when no hardship was alleged by the applicant; 2) in granted a provisional permit when the use requested by the applicant was not a permitted use listed under the RG-0 classification; 3) in not applying the 3,000 feet spacing requirement of Section 250.082 of the Group Home Ordinance to the applicant; 4) in that the Chairman ruled that a tie vote of three-to-three was in favor of the applicant; and 5) in allowing the applicant to stay on the site when there was a showing by the neighbors of hardships caused by the applicant's presence.

The petitioner filed an additional sustaining ground for the order of the circuit court asserting that the four-vote statutory minimum requirement for Boards of Adjustment to grant relief was impliedly repealed by the amendment to S.C. Code Ann. § 47-1007 (1962) as reflected in S.C. Code Ann. § 5-23-70 (Supp. 1991) reducing the minimum number of members on such Boards from five to three.

The Court of Appeals reversed the circuit court, holding 1) that the initial permit granted the use for one year only and expired in December of 1986; 2) that in January of 1987, prior to any further action on petitioner's renewal, City Council enacted the ordinance requiring permits for group homes to be granted only upon review by the Board Adjustment; and 3) that the applicable state statute and city ordinance require four concurring votes in favor of permitting the use in order to grant a permit. This review followed.

The issues before this Court concern whether or not the Court of Appeals erred: 1) In reversing the circuit court on grounds not raised by proper exceptions; 2) in considering an administrative review of a subordinate employee's action and

applying to such review the more rigorous standards required of the Board of Adjustment when granting a zoning variance or a "use permitted on review" permit; and 3) in requiring four concurring votes in order to grant the petitioner a subsequent permit.

The petitioner asserts that respondents failed to frame proper exceptions in that they attributed no error to the circuit court, but merely attacked the Board of Adjustment's decision.

While the issue was raised and briefed by the Board of Adjustment and the City of Rock Hill, neither of which appealed the decision of the Appeals Court, the petitioner did not raise the issue below. Therefore, petitioner may not raise the issue for the first time before this Court. *See Tri-County Ice and Fuel Co. v. Palmetto,* 303 S.C. 237, 399 S.E. (2d) 779 (1990); *Hoffman v. Powell,* 298 S.C. 338, 380 S.E. (2d) 821 (1989); *SSI Medical Services, Inc. v. Cox,* 301 S.C. 493, 392 S.E. (2d) 789 (1990).

Moreover, when reviewing an exception to ascertain whether it has been framed in accordance with the rules, if the appellate court determines that a meritorious assignment of prejudicial error is sufficiently embraced, it may elect to waive any breach of the rules and consider the exception provided the issue is reasonably clear to the reviewing court and the opposing party. Without diminution of the necessity to adhere to established procedures in matters on appeal, substance will generally take precedence over technical rules in considering exceptions. Reviewing courts will construe an exception as liberally as allowed by the language so long as such construction does not mislead the adverse party to his prejudice. *Allen v. Hatchell,* 242 S.C. 458, 313 S.E. (2d) 516 (1963); *Burke v. Davidson,* 298 S.C. 370, 380 S.E. (2d) 839 (S.C. App. 1989); *Bartles v. Livingston,* 282 S.C. 448, 319 S.E. (2d) 707 (S.C. App. 1984). We conclude that the issue in respondents' exceptions are reasonably clear and that a liberal construction sufficiently imputes error to the circuit court.

Next, petitioner alleges error on the part of the Court of Appeals in applying an inappropriate standard of review to an administrative review of the action of a subordinate employee. The petitioner asserts that the Court of Appeals erroneously applied the more rigorous standard for

granting a variance, contending the proceeding was merely a follow-up to the initial review at which the Board of Adjustment reversed the action of the zoning official. We agree.

The pertinent statutory authority of Boards of Adjustment is as follows:

> (1) To hear and decide appeals when it is alleged that there is error in any order, requirement, decision or determination made by an administrative official . . .
>
> (2) To hear and decide special exceptions to the terms of any ordinance upon which such board is required to pass under such ordinance; and
>
> (3) To authorize upon appeal in specific cases such variance from the terms of any ordinance as will not be contrary to the public interest when, owing to special conditions, a literal enforcement of the provisions of such ordinance will result in unnecessary hardship and so that the spirit of such ordinance shall be observed and substantial justice done.

S.C. Code Ann. § 5-23-100 (1976).

In reversing the Zoning Administrator's decision, the Board of Adjustment voted four-to-one "to grant the use for one year during which the Planing Commission and City Council would be asked to review the Code to determine whether and in what districts shelters should be specified in the Code, and during which the operation of the shelter and any problems experienced by the neighbors could be observed. If after one year, the Code has been changed to exclude such use in RG-0 or if sufficient problems have occurred causing hardship on the neighbors, the Board would require that the shelter move from the location." We note that when the permit was issued, shelters of the nature proposed were not mentioned in the regulations as being either included in or excluded from districts zoned RG-0.

According to the record, at meeting in January and February of 1987, the Board of Adjustment considered complaints from neighbors of problems arising from the operation of the shelter and discussed at length whether the issue was to be treated as a variance or as a review. The Chairman referred to the minutes of the December 1985 meeting which contained the provision for the one-year review. By consensus, the

Board of Adjustment acted on the Chairman's observation that the matter was before it to "review what we said we were going to review," and proceeded to vote.

■ The reviewing court will not disturb the findings and decision of the Board of Adjustment unless it determines that such findings or decision resulted from action of the Board which is arbitrary, an abuse of discretion, illegal, or in excess of lawfully delegated authority. *Fontaine v. Peitz*, 291 S.C. 536, 354 S.E. (2d) 565 (1987).

Based upon the record before this Court, we conclude that the nature of the March, 1987, proceeding was a review pursuant to provisions enunciated in conjunction with the permit granted as a result of the administrative review in December of 1985, and not one for a variance from the terms of the ordinance thereafter enacted. The shelter was allowed to located in an area where it was not prohibited. Thereafter, the area was rezoned to allow the location of such a shelter upon review. We find no evidence of an application for a variance, although the Board devoted some of its discussion to whether or not the matter was to be disposed of as a variance. The Board determined that a review was to be conducted to determine whether the shelter would be required to discontinue operations at the site where it had already been permitted. This Court holds that the Board was within its authority to conduct the review in the manner chosen.

■ Petitioner's final argument is that the Court of Appeals erred in construing a tie vote as an affirmative vote requiring removal of its shelter.

In making its determination, the Court of Appeals relied upon S.C. Code Ann. § 5-23-140, which initially required four concurring votes and, by later amendment, a majority concurring vote by members of a Board of Adjustment to reverse, affirm or modify an appealed order or decision of an administrative official.

We conclude that Section 5-23-140 is applicable to the December, 1985, administrative review which resulted in a reversal of the Zoning Administrator's decision. However, at the meeting in March, 1987, the Board of Adjustment sought to determine by a majority "yes" or "no" vote whether or not the status it granted previously would be rescinded. The recorded indicates that when the permit was issued and at the

time of the review one year later, it was the intent of the Board of Adjustment that a finding in the affirmative as to either question was, in essence, a mandate requiring the shelter to move from the district. This Court holds that, absent such a finding, the shelter would be allowed to remain on the site.

Petitioner also asserts that it acquired a vested right with the granting of the permit in December of 1985. Our holding is not to be construed as a determination of this issue, and the permit is subject to such review or challenge as provided by ordinance or statute.

For the foregoing reasons, the decision of the court of Appeals is reversed.

Reversed.

HARWELL, C.J., TOAL, J., and J. ERNEST KINARD, JR., Acting Associate Justice, concur.

GREGORY, C.J., not participating.