516 S.E.2d 439

**BANNUM, INC., a Kentucky Corporation with a principal place of business in Largo, Florida, Appellant,**

v.

**CITY OF COLUMBIA, a municipality with a principal place of business in Columbia, South Carolina and City of Columbia Zoning Board of Adjustments, an appointed agency of the City of Columbia, Respondents.**

**No. 24943.**

Supreme Court of South Carolina.

Heard Feb. 18, 1999.

Decided May 7, 1999.

P. Benjamin Zuckerman, of Lewis, Babcock and Hawkins, L.L.P., of Columbia, for appellant.

Thomas E. Ellenburg, of Columbia, for respondents.

PER CURIAM:

Bannum, Inc. (Bannum) appeals a circuit court order affirming the Zoning Board of Adjustment's (ZBA) denial of a "special exception" permit to use 1608 Westminster Drive as a residential care facility for federal ex-offenders. We reverse.

## FACTS

Bannum provides residential "halfway houses" for persons recently released from federal prison. In February, 1997, the

Bureau of Prisons (BOP) issued a request for proposals (RFP) to construct and manage a 24 bed residential care facility in Columbia.[1] Bannum inquired of the City Zoning Administrator as to zoning requirements for such residential care facilities, and was advised by the Administrator, in March 1997, that such facilities having more than 9 occupants are allowed in C–3 districts upon obtaining a "special exception" permit.[2] In April, 1997, Bannum leased the property at 1608 Westminster Drive.[3] Thereafter, the BOP awarded Bannum a contract for the halfway house, contingent on Bannum obtaining all necessary local permits by Dec. 1, 1997. On Aug. 13, 1997, Bannum sought a special exception permit. At a hearing on Sept. 9, 1997, the ZBA determined, contrary to the opinion of its Administrator, the halfway house was *not* a "residential care facility." Accordingly, the ZBA denied Bannum's request for a special exception. Thereafter, the ZBA decided the proposed facility was, in fact, a "residential care facility," and granted a rehearing. After its October 14, 1997 rehearing, the ZBA denied Bannum's request for a special exception, holding the halfway house would have a negative impact on traffic and vehicular and pedestrian safety. The circuit court affirmed the ZBA's denial of the permit.

1. The facility will serve up to 29 ex-inmates, all of whom are from the Columbia area; approximately 23 will be overnight residents of the facility, the remaining 6 will spend the night at their Columbia residences. In addition to housing, Bannum assists its clients by providing job search assistance, counseling, training, etc. It also imposes a curfew, and performs alcohol and drug screenings. The facility does not house violent criminals, but does accept people convicted of federal drug offenses.

2. A special exception permit requires the ZBA to consider 1) Traffic Impact; 2) Vehicle and pedestrian safety; 3) Potential impact of noise, fumes, or obstruction of air flow on adjoining property; 4) Adverse Impact of the proposed use on the aesthetic character of the environs, to include possible need for screening from view; and 5) Orientation and spacing of improvements on buildings. Columbia City Code of Ordinances, § 6–3192(2)(6)(c)(1–5).

3. Westminster Drive crosses Forest Drive in Columbia, a short distance from Providence Hospital, near the Forest Hills subdivision. The leased property is zoned C–3 commercial, and at the time this matter arose, was being used by the Richland County Mental Retardation Center providing job placement services to the mentally disabled.

## ISSUE

Did the circuit court err in upholding the ZBA's denial of a special exception permit?

## STANDARD OF REVIEW

■ This Court will not disturb the findings of the Board of Adjustment unless such findings or decision resulted from action of the Board which is arbitrary, an abuse of discretion, illegal, or in excess of lawfully delegated authority. *Brock v. Board of Adjustment and Appeals of City of Rock Hill,* 308 S.C. 539, 419 S.E.2d 773 (1992); *Fontaine v. Peitz,* 291 S.C. 536, 354 S.E.2d 565 (1987). *See also Condor, Inc. v. Board of Zoning Appeals,* 328 S.C. 173, 493 S.E.2d 342 (1997).

## DISCUSSION

■ Bannum contends ZBA's denial of its permit was arbitrary. We agree.

The ZBA either discounted or disregarded every single bit of evidence put up by Bannum.[4] Instead, it based its holding on the four factors submitted by opponents: 1) testimony as to

4. The ZBA completely discounted Bannum's evidence submitted by its private investigator, Mark Kelly, who had monitored the existing site occupied by the Dept. of Mental Retardation (DMR), for four hours one day, from 9:15 am until 1:15 pm, finding it too limited in time and scope. It also discounted a "Brief Traffic Assessment" prepared by Wilbur Smith Associates because the Smith study compared traffic using the site as a Medical Office (which could be done in a C–3 zone without the need for a special exception permit), rather than comparing the proposed use with the **existing** use by the DMR. We find the ZBA's reliance on this factor to avoid the impact of the Smith study spurious. We know of no requirement that a traffic assessment must be performed comparing **existing** to proposed use. Were that the case, a special exception permit would never issue for vacant premises, because traffic would always increase, and thereby be negatively impacted by the proposed use. Accordingly, we find the ZBA erred in refusing to give consideration to the Smith study, which specifically concludes the proposed use will generate substantially less traffic than the existing use. Moreover, there is simply no explanation in the record as to why the ZBA gave **no** regard to a) the affidavit of David Lowry (Bannum's president) (indicating proposed facility would have substantially lesser traffic impact than existing facility at 1608 Westminster, b) the affidavit of attorney Carl Holloway to the effect that proposed use should substantially lessen traffic, and c) the affidavit of realtor James Gordon to the same effect.

traffic counts on Forest Drive, 2) testimony that Westminster Drive is used as a "cut through" street, 3) testimony that *any increase* in traffic would adversely impact vehicle and pedestrian safety, and 4) a Government Accounting Office (GAO) study concerning recidivism rates of ex-offenders.

As to numbers 1–3, although there was evidence concerning existing traffic on Forest Drive, and speculation that the halfway house residents will use Westminster as a cut-through, there was simply no evidence presented the proposed use will generate greater use than the existing mental health facility. On the contrary, the evidence was to the effect that the proposed use would likely decrease traffic as the majority of halfway house residents will not own automobiles but will utilize public transportation. Although neighboring residents testified they felt the halfway house would increase traffic, there is simply no concrete evidence to support this fact. Accordingly, the ZBA's finding that *any increase* in traffic would adversely impact vehicle and pedestrian safety is irrelevant as there is no evidence of an increase.

The only piece of evidence which arguably supports the ZBA's decision is a GAO (General Accounting Office) study concerning "Trends in Community Supervision of Federal Offenders." The ZBA relied on the GAO report for the premise that a certain number of the halfway house residents will be recidivists, which will adversely affect the safety of pedestrians in the area by "having potentially recidivist violent individuals and drug users in the area." However, according to Bannum's attorney, Mr. Zuckerman, and the affidavit of Bannum's president, David Lowry, the GAO study is simply inapplicable to halfway houses such as Bannum's.

Moreover, even assuming the GAO report concerns halfway houses such as Bannum's, it does not justify the ZBA's decision in this case. There is no evidence in the report which correlates the recidivism rates of federal offenders to "pedestrian safety." In fact, counsel for the City conceded at oral argument before this Court, that the danger to pedestrian safety was "extrapolated" from the GAO report by the ZBA. This is simply insufficient to constitute "any evidence" under our standard of review.

## CONCLUSION

After reading the entire record in this case, it is inescapable to us that the ZBA's decision was based, not on the requirements of the "special exception" ordinance, but upon the fears of neighboring residents who did not want "those type of people" in their neighborhood. Although we are sympathetic to the concerns of neighboring individuals, the ordinance simply does not provide such a basis for denial of the permit. Accordingly, the circuit court's order affirming the denial of Bannum's special exception permit is

**REVERSED.**