551 S.E.2d 229

**J. Kirkland GRANT, Respondent,**

v.

**CITY OF FOLLY BEACH, Petitioner.**

**No. 25317.**

Supreme Court of South Carolina.

Heard Feb. 7, 2001.
Decided July 16, 2001.
Rehearing Denied Sept. 12, 2001.

Phillip S. Ferderigos and James E. Reeves, of Barnwell, Whaley, Patterson & Helms, L.L.C., and Otis B. Peeples, Jr., of Peeples & Stringer, of Charleston, for petitioner.

Melinda A. Lucka, of Charleston, for respondent.

MOORE, Justice:

This case involves an order by petitioner's (City's) Building Official requiring respondent Grant to evacuate all residential occupants and remove all kitchen improvements in the downstairs level of a building Grant owns in City. After a hearing, City's Zoning Board of Adjustment (Board) denied Grant's request to overturn the Building Official's order and the circuit court affirmed. In an unpublished opinion, the Court of Appeals affirmed in part and reversed in part. We granted City's petition for a writ of certiorari and now reverse.

## FACTS

In 1993, Grant purchased a two-story building located within City. At that time, the building contained three apartments on the second floor. Three units (A, B, and C) were located on the ground floor. Unit A had a bath, kitchen, wall heater, and air conditioner. Unit C contained a kitchen. The previous owner had rented the three second floor apartments, lived in Unit C, and rented Unit A to residential tenants.

Before purchasing the property, Grant requested a written opinion from City's Building Official regarding whether an ice cream shop could be located in the lower level of the building. By letter, City's then Building Official, Forrest Tucker, responded:

... regarding your desire to situate an ice cream shop in the lower level ...

... my initial concern focussed [sic] on locating a commercial activity below the base flood elevation (BFE) in what appears to be a residential structure. I have reviewed the matter with the Atlanta office of FEMA and jointly, we

have concluded that your venture does not appear to violate any of our community regulations. Since less than 75% of this structure is devoted to residential use, it is classified as a non-residential structure. Accordingly, properly flood proofed uses below the BFE would be allowed.

As to whether you must properly flood proof the lower level in concert with all requirements for new construction, the answer is "no" provided your renovations do not exceed 50% of the structure's pre-improvement value. As long as you do not exceed the 50% threshold, you may locate your ice cream shop in the lower level without complying with the mandatory flood proofing provisions of new construction.

After he purchased the property, Grant received building permits from City and made improvements to the ground floor units. One of the permits describes "Downstairs Apt. # 1" as the location of the job. Grant added bathrooms to Units B and C and upgraded the kitchen sink in Unit C. A tenant installed a kitchen in Unit B. Grant did not locate an ice cream store in the building. From June 1994 to June 1995, he rented the units to commercial tenants.

By letter dated January 3, 1996, Tom Hall, City's current Building Official, notified Grant as follows:

The building . . . is a post FIRM building and the down stairs [sic] may not be used for any occupancy other than commercial. The commercial tenants may not use the downstairs as a commercial live-in.

Consequently, you have until Monday, January 8 [th] at noon to evacuate all residential occupants and by February 3, 1996 the owner of the building must show a plan to remove all the kitchen improvements downstairs. The bath-rooms [sic], which are is [sic] allowed in commercial space may remain.[1]

Grant appealed the notice. At the Board hearing, Hall testified he had seen residents living in the three downstairs units. According to Hall, City's zoning/flood ordinance pre-cludes living space, plumbing, and electrical connections for residential purposes below the base flood elevation (BFE).

---

1. City has consistently agreed Grant may use the lower level of his building for commercial purposes.

Hall further testified the letter from the former Building Official approving the downstairs units for use as an ice cream shop was in error.

Grant testified he wanted Unit A to remain residential and Units B and C to be designated for commercial purposes. He stated he did not believe the kitchens in Units B and C should have to be removed because he was told an ice cream store, which he asserts requires a kitchen, could be placed in those locations. Grant admitted he bought the property without reading City's flood regulations.

In its written order, the Board concluded:

[Grant's] request to overturn the order of the Building Official with respect to evacuation of the tenants and removal of the kitchens is hereby denied. All tenants must be evacuated and all kitchens, for all purposes—residential and commercial, must be removed.

## ISSUES

1. Did the Court of Appeals err in holding South Carolina Code Ann. § 6–7–760 (1977) requires the Board to file a transcript with the clerk of the circuit court?

2. Did the Court of Appeals err in remanding this matter to the Board to hear evidence on Grant's estoppel claims?

## DISCUSSION

### 1. Failure to file transcript

The Court of Appeals remanded this case for reconstruction of the record because the Board failed to file with the circuit court a transcript of the hearing as required under § 6–7–760. City claims this was error.

Section 6–7–760 provides in relevant part:

Upon the filing of such an appeal [from the board of adjustment], the clerk of the circuit court shall give immediate notice thereof to the secretary of the board and within thirty days from the time of such notice the board shall cause to be filed with the clerk a duly certified copy of the proceedings had before .... the board of adjustment, *in-*

*cluding a transcript of the evidence heard before it, if any,* and the decision of the board.[2]

(emphasis added).

██  The Court of Appeals held this section requires that a transcript be filed if evidence was heard before the Board. City asserts that a transcript must be filed only if one has been prepared at the Board's discretion. In construing this statute, City contends the phrase "if any" modifies the noun "transcript," not the phrase "of the evidence heard before it." We agree with City's proposed construction of § 6–7–760.

██  The cardinal rule of statutory construction is for the Court to ascertain and effectuate the intent of the legislature. *Mid–State Auto Auction of Lexington, Inc. v. Altman,* 324 S.C. 65, 476 S.E.2d 690 (1996). If a statute's language is plain and unambiguous, and conveys a clear and definite meaning, there is no occasion for employing rules of statutory interpretation and the Court has no right to look for or impose another meaning. *Miller v. Doe,* 312 S.C. 444, 441 S.E.2d 319 (1994). Where a statute is ambiguous, however, we must construe the terms of the statute according to settled rules of construction. *Lester v. South Carolina Workers' Compensation Comm'n,* 334 S.C. 557, 514 S.E.2d 751, (1999). It is well-settled that statutes dealing with the same subject matter are *in pari materia* and must be construed together, if possible, to produce a single, harmonious result. *Joiner v. Rivas,* 342 S.C. 102, 536 S.E.2d 372 (2000).

We find the language of § 6–7–760 ambiguous and, under our rules of statutory construction, determine it should not be construed to mandate the preparation of a transcript. Under S.C.Code Ann. § 6–7–740 (1977),[3] the legislature has instructed that the Board "shall keep records of its examinations and other official actions, all of which shall be immediately filed in the office of the board and shall be a public record." In specifying the Board's duties at the time of the hearing, the legislature has imposed no requirement that a verbatim recording be made. Any party wishing to appeal a decision of

---

**2.** Section 6–7–760 has been repealed and recodified with similar language at S.C.Code Ann. § 6–29–830 (Supp.2000).

**3.** Now recodified as S.C.Code Ann. § 6–29–790 (Supp.2000).

the Board has access to the record provided under § 6–7–740. Reading § 6–7–760 together with § 6–7–740, as we must, we conclude the legislature intended that preparation of a transcript remains within the Board's discretion.

We find the Court of Appeals erred in holding a transcript must be filed when there is an appeal to the circuit court. In light of this conclusion, the remand for reconstruction of the record ordered by the Court of Appeals is unnecessary.

## 2.  Estoppel

In affirming the Board's decision, the circuit court rejected Grant's assertion that City was estopped to order the exclusion of residential tenants and the removal of kitchens. On appeal of the circuit court's order, the Court of Appeals remanded to the Board to "hear evidence on and consider Grant's estoppel claim." City argues this was error. We agree. Because we find the record adequate to review this issue, remand is not necessary and we affirm on the merits as follows.

Grant agrees City's ordinance precludes residential tenants from living in the ground floor units of his building. He claims, however, that City should be estopped from precluding residential use of Unit A because City officials issued building permits allowing residential use of that unit. Grant further claims City issued building permits for kitchens in Units B and C and rendered a written opinion allowing kitchens in those units.

As a general rule, estoppel does not lie against the government to prevent the due exercise of its police power or to thwart the application of public policy. *South Carolina Dep't of Soc. Servs. v. Parker*, 275 S.C. 176, 268 S.E.2d 282 (1980). This does not mean that estoppel cannot apply against a government agency. *Landing Dev. Corp. v. City of Myrtle Beach*, 285 S.C. 216, 329 S.E.2d 423 (1985). To prove estoppel against the government, the relying party must prove (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question, (2) justifiable reliance upon the government's conduct, and (3) a prejudicial change in position. *Midlands Utility, Inc. v. South Carolina Dep't of Health and Envtl. Control*, 298 S.C. 66, 378 S.E.2d 256 (1989). Because

we find Grant failed to meet the first element of estoppel, we affirm the circuit court's order.

Two pertinent cases address the first element of estoppel. In *Abbeville Arms v. City of Abbeville,* 273 S.C. 491, 257 S.E.2d 716 (1979), Abbeville Arms obtained an option to purchase real property with the intent to construct a multi-family housing project on property zoned R–6 High Density Residential. After it reviewed the Abbeville zoning ordinance, the official zoning map, and obtained a letter from the zoning administrator, Abbeville Arms applied for a building permit. Five days later, the city council adopted a resolution stating that, through inadvertence and neglect, the official zoning map was defective and the subject property was actually zoned R–8 Medium Density Residential, thereby prohibiting the housing project.

In discussing the first element of estoppel, we noted Abbeville Arms had checked the zoning ordinance, including the official zoning map, which indicated the property was zoned R–6 High Density Residential. Through correspondence with the City zoning administrator, Abbeville Arms confirmed the zoning for its project. We concluded "it is clear that the defect [on the zoning map] was latent and that respondent lacked knowledge and the means of knowledge as to its existence." *Id.* at 494, 257 S.E.2d at 718. We held the city was estopped to deny Abbeville Arms a building permit.

*Landing Dev. Corp. v. City of Myrtle Beach, supra,* involved the development of condominium units for short-term rentals in a district zoned for "one, two and multi-family dwellings including ... condominiums ... for permanent occupancy." The zoning ordinance did not define "permanent occupancy" and there was no law equating "permanent occupancy" with occupancy by a permanent resident. When asked if rentals were permitted in the district, the Director of Zoning and Housing for Myrtle Beach indicated they were and eventually issued business licenses to permit short-term rentals. The Director later informed respondents that short-term rentals were not permitted.

In concluding Myrtle Beach was estopped from denying business licenses for short-term rentals, we held:

[r]espondents lacked the knowledge or means to know that short-term vacation rentals were prohibited in the A–3 District. The only definitive source of information concerning the interpretation and enforcement of the ordinance was [the Director].

285 S.C. at 220, 329 S.E.2d at 425.

■ In this case, City issued a building permit for work in "Downstairs Apt. # 1." Assuming the permit's reference to an "apartment" misled Grant into believing residential use was permitted in Unit A, issuance of the permit does not estop City from enforcing its zoning/flood ordinance which precludes residential use of the downstairs floor. Grant could have easily ascertained the flood limitations on his building by reviewing the zoning/flood ordinance. Unlike the developers in *Landing Dev. Corp.* and *Abbeville Arms,* Grant had the means but failed to obtain this information. Accordingly, we conclude City is not estopped from excluding residential use of Unit A.

■ Further, the building permits issued by City for Units B and C describe the work to be done as "plumbing," "HVAC," and "additional wiring for electrical circuits." There is no reference to kitchens. By issuing these permits, City did not approve their installation. Although City agrees it is bound by its former Building Official's written opinion approving Grant's downstairs units for an ice cream shop, that opinion does not approve installation of a kitchen. *Town of Sullivans Island v. Byrum,* 306 S.C. 539, 413 S.E.2d 325 (Ct.App.1992) (town not estopped from challenging use of garage as apartment where no evidence of any statement or conduct by town that reasonably misled homeowner into believing garage apartment was a permitted use). We conclude City is not estopped from prohibiting kitchens in the downstairs level of Grant's building.[4]

---

4. In addition, Grant testified a tenant added the kitchen in Unit B. Since Grant did not detrimentally change his position based on the issuance of building permits for Unit B, he has failed to meet the third element of estoppel as to this unit. *See Midlands Utility, Inc., v. South Carolina Dep't of Health and Envtl. Control, supra* (in order to establish estoppel, party claiming estoppel must prejudicially change position in reliance upon government conduct).

The Board's decision is supported by the evidence. Accordingly, the order of the circuit court upholding the Board's order is affirmed. *Bannum, Inc., v. City of Columbia*, 335 S.C. 202, 516 S.E.2d 439 (1999) (appellate court will not disturb the findings of the Board of Adjustment unless such findings or decision resulted from board action which is arbitrary, an abuse of discretion, illegal, or in excess of lawfully delegated authority); *Charleston County Parks & Recreation Comm'n v. Somers*, 319 S.C. 65, 459 S.E.2d 841 (1995) (Supreme Court will not reverse circuit court's affirmance of zoning board unless board's findings of fact have no evidentiary support or board commits an error of law).[5] The Court of Appeals' decision is

**REVERSED.**

TOAL, C.J., WALLER and PLEICONES, JJ., concur.
BURNETT, J., concurring in part and dissenting in part in a separate opinion.

BURNETT, Justice (concurring in part and dissenting in part):

I concur in part and dissent in part. I concur with the majority regarding Grant's estoppel claim. I respectfully dissent, however, from the majority's conclusion which allows a zoning board to produce a transcript of a hearing solely at its own discretion.

In relevant part, South Carolina Code Ann. § 6–7–760 (1977) provides:

*Upon the filing of such an appeal [from the board of adjustment], the clerk of the circuit court shall give immediate notice thereof to the secretary of the board and within thirty days from the time of such notice the board shall cause to be filed with the clerk a duly certified copy of the proceedings had before .... the board of adjustment, including a transcript of the evidence heard before it, if any,*

---

5. The circuit court did not address Grant's vested right and waiver claims and these issues are not before us.

and the decision of the board.[6]

(Underline added).

"If a statute's language is plain and unambiguous, and conveys a clear and definite meaning, there is no occasion for employing rules of statutory interpretation and the court has no right to look for or impose another meaning." *Paschal v. State Election Comm'n,* 317 S.C. 434, 436, 454 S.E.2d 890, 892 (1995). However, where the language of an act gives rise to doubt or uncertainty as to legislative intent, the construing court may search for that intent beyond the borders of the act itself. *The Lite House, Inc., v. J.C. Roy, Co.,* 309 S.C. 50, 419 S.E.2d 817 (Ct.App.1992).

A statute as a whole must receive a practical, reasonable, and fair interpretation consonant with the purpose, design, and policy of lawmakers. *Roche v. Young Bros., Inc., of Florence,* 332 S.C. 75, 504 S.E.2d 311 (1998). "Any ambiguity in a statute should be resolved in favor of a just, equitable, and beneficial operation of the law." *Bennett v. Sullivan's Island Bd. of Adjustment,* 313 S.C. 455, 458, 438 S.E.2d 273, 274 (Ct.App.1993). In giving effect to legislative intent, the court is constrained to avoid an absurd result. *South Carolina Tax Comm'n v. Gaston Copper Recycling Corp.,* 316 S.C. 163, 447 S.E.2d 843 (1994).

The majority and I agree that Section 6–7–760 is ambiguous. As noted by the majority, "if any" arguably modifies the noun "transcript;" alternatively, "if any" modifies the phrase, "evidence heard before it."

In my opinion, the most reasonable interpretation of § 6–7–760 is that the legislature intended to require a zoning board to prepare and file a transcript with the circuit court whenever evidence was presented before it and its decision is appealed. Requiring a zoning board to file a transcript if it prepares one leaves the production of a verbatim transcript at the discretion of the zoning board, a result I find the legislature could not have intended. My interpretation is entirely consistent with § 6–7–740 which requires zoning boards to keep public records of its hearings and other official actions. In compliance

---

**6.** Section 6–7–760 has been repealed and recodified with similar language at § 6–29–830 (Supp.2000).

with this section, zoning boards can record evidentiary proceedings then transcribe the recording if a decision is appealed.[7]

Because of my interpretation of § 6–7–760, I necessarily must address City's question whether the Court of Appeals erred by concluding the circuit court should have remanded this matter to the Board for rehearing after Grant encountered hostility while attempting to reconstruct the record.

At the initial hearing before the circuit court, the parties agreed the tape recording from the Board hearing was of poor quality and could not be transcribed. Accordingly, Grant moved to either reconstruct the record or hold a new hearing. The circuit court allowed Grant to reconstruct the record by stipulation, affidavit, or transcript.

At the second hearing, Grant's attorney stated:

... it was a bit difficult to supplement the record, Your Honor. I guess one explanation might be that these were not friendly witnesses, in that I did not get return phone calls from people I really wanted to get affidavits from, since I could not require them [to] call me back or cooperate.

City's attorney responded:

Your Honor, [Grant's attorney]—I don't think she meant to imply this, but I just want to present to the Court that we have been very cooperative in trying to reach a stipulation. She talked about not [sic] able to reach people. I do not believe those people were city employees, and I do not believe she meant to imply that [City's attorney] or I somehow, you know, caused the problem.

Grant's attorney replied:

It is correct that I did not imply that they were not cooperative at all. They have been, but, nonetheless, Your Honor, the record is still incomplete.

Grant reconstructed the record with an affidavit from his property manager.

---

7. Under my interpretation, zoning boards need not employ full-time court reporters.

The record does not support the Court of Appeals' conclusion Grant was "prohibited in obtaining affidavits" and "encountered a hostile environment" in attempting to reconstruct the record. The record indicates the circuit court gave Grant the opportunity to reconstruct the record from the Board hearing through stipulation, affidavits, or transcript. Although she initially suggested otherwise, Grant's counsel agreed City's employees were cooperative.

The circuit court properly allowed Grant to reconstruct the record. *See Dolive v. J.E.E. Developers, Inc.*, 308 S.C. 380, 418 S.E.2d 319 (Ct.App.1992) (holding trial court did not err in granting property owner's request to reconstruct the record of zoning proceeding where portions of original tape of hearing were incapable of being transcribed and loss of vital portions of record appeared to have been through no fault of zoning board); *see also China v. Parrott*, 251 S.C. 329, 162 S.E.2d 276 (1968) (where portions of stenographic notes of trial proceeding were lost before being transcribed, not error for trial judge to consider affidavit of trial counsel and court reporter in determining what transpired). Because Grant failed to take advantage of the opportunity to reconstruct the record by obtaining a stipulation with City's attorney, deposing witnesses, and/or filing his own and his attorney's [8] affidavits, he is not entitled to a new hearing.[9]

I would affirm in part and reverse in part the Court of Appeals' opinion.

---

**8.** A different attorney represented Grant on appeal.

**9.** Section 6–9–840 (Supp.2000) specifically provides that if the circuit court judge "determines that the certified record is insufficient for review, the matter may be remanded to the zoning board of appeals for rehearing." This section became effective in May 1999. *See* Act No. 355, 1994 S.C. Acts 4036. The predecessor to this section, § 6–7–780, did not have a provision for remand.