577 S.E.2d 428

**GREENVILLE COUNTY, Respondent,**

v.

**KENWOOD ENTERPRISES, INC., and Elephant, Inc., d/b/a Platinum Plus, and Ken Wood, Appellants,**

Greenville County, Respondent,

v.

**HH & M, Inc., and First Five Management, Inc., d/b/a Heartbreakers, Appellants,**

Greenville County, Respondent,

v.

**Pretty Woman, Inc., Appellant.**

No. 25584.

Supreme Court of South Carolina.

Heard Nov. 19, 2002.

Decided Jan. 27, 2003.

158

Harry T. Heizer, Jr., of Columbia, and Randall S. Hiller, of Greenville, for Appellants Kenwood Enterprises, Inc., and Elephant, Inc., d/b/a Platinum Plus, and Ken Wood.

Robert C. Childs and Laura W.H. Teer, of Greenville for Appellants HH & M, Inc., and First Five Management, Inc., d/b/a Heartbreakers.

Suzanne E. Coe, of Atlanta, for Appellant Pretty. Woman, Inc.

W. Howard Boyd, Jr., Ronald K. Wray, II, and Andrea M. Hawkins, of Gallivan, White & Boyd, P.A., of Greenville for Respondent.

JUSTICE WALLER:

Appellants appeal from the trial court's order granting summary judgment in favor of respondent Greenville County. We affirm.

## PROCEDURAL BACKGROUND

Greenville County ("the County") brought lawsuits against appellants to enforce the County's ordinance regulating the location of sexually oriented businesses. The trial court granted summary judgment in favor of the County and enjoined appellants from operating their businesses. In addition, the trial court granted the County summary judgment on appellants' counterclaims. Appellants Kenwood Enterprises, Inc., and Elephant, Inc., d/b/a Platinum Plus, and Ken Wood (collectively "Platinum Plus") and HH & M, Inc., and First Five Management, Inc., d/b/a Heartbreakers (collectively "Heartbreakers") together have filed a brief raising several issues on appeal. Appellant Pretty Woman, Inc., d/b/a Diamonds ("Diamonds") filed a separate brief raising a single issue.

## FACTS

On February 7, 1995, the County enacted Greenville County Zoning Ordinance No. 2673 ("the Ordinance"). The Ordinance established both a licensing scheme and location restrictions for sexually oriented businesses. Several adult businesses (but none of the appellants in the instant case) challenged the constitutionality of the Ordinance in *Harkins v. Greenville County*, 340 S.C. 606, 533 S.E.2d 886 (2000), *cert. denied*, 531 U.S. 1125, 121 S.Ct. 880, 148 L.Ed.2d 789 (2001), and the *Harkins* Court invalidated the licensing portion of the ordinance. The *Harkins* opinion initially was filed on April 24, 2000. On June 12, 2000, the Court withdrew the April 24 opinion, denied a petition for rehearing, and refiled the opinion, stating that the "Conclusion section of the initial opinion has been **clarified** so that only the licensing portion of the Greenville County Ordinance is declared unconstitutional." *Id.* at 611, 533 S.E.2d at 888 (emphasis added). In August 2000, the County instituted the instant actions against appellants.

The Ordinance states that County Council considered, *inter alia*, several summaries of other cities' land use studies as well as court cases including *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). Based on these materials, County Council concluded that "in areas surrounding adult-oriented entertainment establishments crime increases, property values decrease, and the quality of life for residents declines." Moreover, the "Purpose and Intent" section of the Ordinance provides as follows:

It is the purpose of this ordinance to regulate sexually oriented businesses to promote the health, safety, morals, and general welfare of the citizens of the county, and to establish reasonable and uniform regulations to prevent the continued deleterious location and concentration of sexually oriented businesses within the county. The provisions of this ordinance have neither the purpose nor effect of imposing a limitation or restriction on the content of any communicative materials including sexually oriented materials. Similarly, it is not the intent or effect of this ordinance to restrict or deny access by adults to sexually oriented materials protected by the First Amendment, or to deny access by the distributors and exhibitors of sexually oriented entertainment to their intended market . . .

Section 12 of the Ordinance governs the location of sexually oriented businesses, and subsection (a) provides that all sexually oriented businesses shall be located in an S–1 district. Subsection (b) establishes a 1500–foot setback requirement such that a sexually oriented business cannot be located within 1500 feet of nine enumerated types of properties, including a church, school, boundary of a residential district, and property line of a lot devoted primarily to residential use. Subsection (c) states that a sexually oriented business cannot be within 1500 feet of another sexually oriented business. In subsection (i), the provisions, with the exception of subsection (a), are made applicable to "those areas of the county that are not zoned." [1]

---

1. In *Harkins*, this Court recognized that when read together, the subsections of Section 12 allowed sexually oriented businesses to locate in the County's unzoned areas, in addition to S–1 districts. *Harkins*, 340 S.C. at 620–21, 533 S.E.2d at 893.

Initially, the Ordinance was proposed and drafted as an amendment to the County's Zoning Ordinance ("Zoning Ordinance").[2] Ultimately, however, the Ordinance was not passed as an amendment to the Zoning Ordinance, but instead was passed as a stand-alone ordinance applicable to both the zoned and unzoned areas of the County. John Owings, Jr., of the County's Planning Commission, explained that if the Ordinance had been applied only to the zoned areas of the County, then it would have encouraged the location and possible concentration of adult businesses on the edge of the zoned areas. Thus, Owings advised that the Ordinance should be county-wide and not as an amendment to the Zoning Ordinance.[3]

The Ordinance was given a first and second reading. At the recommendation of the Planning Commission, a workshop was held between the second and third reading. Upon the third reading, the Ordinance's location requirement, originally drafted at 1000 feet, was amended to the 1500–foot requirement, and then County Council adopted the Ordinance as amended.

Platinum Plus, Heartbreakers, and Diamonds are all "sexually oriented businesses," as that term is defined by the Ordinance.[4] Platinum Plus and Heartbreakers are both located in an S–1 district and did not exist when the Ordinance was enacted. Although located in an S–1 district, both Platinum Plus and Heartbreakers violate the Ordinance's 1500–foot location requirement. Diamonds is located in a C–2 district **and** is in violation of the 1500–foot location requirement. Because Diamonds was in existence when the Ordinance was enacted, it was entitled to a one-year moratorium pursuant to Section 12(g) of the Ordinance.

Platinum Plus leased a building in late 1999 and intended to open a nightclub. At the County's request, Platinum Plus advised the County Code Enforcement Administrator, Peter

---

**2.** The County's Zoning Ordinance is part of the Record on Appeal.

**3.** We note, however, that language remained in the final version of the Ordinance that the Zoning Ordinance was being amended.

**4.** Specifically, these businesses all feature adult entertainment by persons "who appear in a state of nudity," and therefore fall under the Ordinance's definition of "adult cabaret."

Nomikos, in December 1999 that it did not intend to operate an adult business at its location. However, after the initial *Harkins* decision was filed, Platinum Plus met with County representatives and was told that the Ordinance had been declared unconstitutional. Platinum Plus was issued a temporary certificate of occupancy on June 30, 2000, which indicated the business was going to be a nightclub only. In a July 27, 2000, letter, Platinum Plus was notified by Nomikos that the substituted *Harkins* opinion upheld the Ordinance's location provisions and that Platinum Plus would be prohibited from being operated as a sexually oriented business. On August 9, 2000, Platinum Plus responded stating the intent to open as a nightclub.

Platinum Plus alleged in its answer that it relied on the representations made by the County that there was no ordinance regulating sexually oriented businesses and modified its renovation plans, spending over $750,000 to construct Platinum Plus as an adult nightclub. Thus, Platinum Plus asserted that the County should be estopped from enforcing the Ordinance against it. In addition, Platinum Plus asserted a claim of gross negligence against the County and sought money damages.

Heartbreakers also had a certificate of occupancy issued to it during the time period between the two *Harkins* opinions. Nomikos testified that the certificate of occupancy was issued with the knowledge that Heartbreakers was going to operate as a sexually oriented business, but at a time when he mistakenly believed that the Ordinance had been declared unconstitutional by this Court. Heartbreakers alleged estoppel against the County and sought money damages.

## APPEAL OF PLATINUM PLUS AND HEARTBREAKERS

### ISSUES

1. Did the trial court err in finding that the Ordinance was properly enacted pursuant to the County's police power and thus did not need to be enacted pursuant to the Comprehensive Planning Act?

2. Is the Ordinance's location requirement constitutional?

3. Did the trial court err in finding the County was not estopped from enforcing the Ordinance?

4. Did the trial court err in granting summary judgment on the counterclaims?

5. Did the trial court err in quashing the subpoenas for County Council members?

## DISCUSSION

### 1. The Ordinance Was Properly Enacted

The trial court ruled that the Ordinance was properly enacted pursuant to the police powers granted to the County by S.C.Code Ann. § 4–9–25 (Supp.2001).[5] Further, the trial court found that the Ordinance is not part of the Zoning Ordinance and did not have to be enacted pursuant to the South Carolina Local Government Comprehensive Planning Enabling Act of 1994, S.C.Code Ann. § 6–29–310 *et seq.* (Supp.2001) ("Comprehensive Planning Act").

Platinum Plus and Heartbreakers argue that the trial court erred because the Ordinance is clearly a zoning ordinance. Furthermore, they argue that if the Ordinance is not a zoning ordinance, it should be "struck down as an illegal land use control act" because the County cannot enact such ordinances unless it complies with the Comprehensive Planning Act. We disagree.

The trial court correctly concluded that the Ordinance was not part of the County's Zoning Ordinance. This does not mean, however, that the Ordinance itself could not fairly be

---

5. This section, entitled "Powers of Counties," provides as follows:

All counties of the State, in addition to the powers conferred to their specific form of government, have authority to enact regulations, resolutions, and ordinances, **not inconsistent with the Constitution and general law of this State,** including the exercise of these powers in relation to health and order in counties or respecting any subject as appears to them necessary and proper for the security, general welfare, and convenience of counties or for preserving health, peace, order, and good government in them. **The powers of a county must be liberally construed in favor of the county and the specific mention of particular powers may not be construed as limiting in any manner the general powers of counties.**

§ 4–9–25 (emphasis added).

characterized, **in general terms,** as a zoning ordinance.[6] The real issue is whether this type of ordinance must be adopted pursuant to the Comprehensive Planning Act. We agree with the trial court's conclusion that this type of ordinance may be adopted pursuant to the County's general police powers and that the Comprehensive Planning Act does not, in effect, preempt this particular type of local legislation.

"In order to pre-empt an entire field, an act must make manifest a legislative intent that no other enactment may touch upon the subject in any way." *Bugsy's, Inc. v. City of Myrtle Beach,* 340 S.C. 87, 94, 530 S.E.2d 890, 893 (2000); *accord Town of Hilton Head Island v. Fine Liquors, Ltd.,* 302 S.C. 550, 397 S.E.2d 662 (1990) (same).

In *Fine Liquors,* we held that while the Legislature gave the Alcoholic Beverage Control Commission the sole and exclusive authority to regulate the sale of beer, wine, and alcohol, it had not preempted the field to preclude Hilton Head from passing a zoning ordinance which prohibited internally illuminated "red dot" signs. Similarly, in *Bugsy's,* we held that the Legislature's enactment of a comprehensive regulatory scheme for video poker did not preempt a municipality from enacting a zoning ordinance that also regulated video poker. We commented as follows in *Bugsy's:*

> [W]hile the General Assembly has enacted a comprehensive scheme regulating many aspects of video poker machines, the scheme does not manifest an intent to prohibit any other enactment from touching on video poker machines. State regulation of video poker machines does not preclude a municipality from passing a zoning ordinance which impacts businesses which have video game poker . . .

*Bugsy's,* 340 S.C. at 94, 530 S.E.2d at 893.

In the instant case, while the Comprehensive Planning Act governs zoning, it simply does not evince a legislative intent to completely prohibit any other local enactments from touching upon zoning or land use. *See id.* That fact, in conjunction with the liberal reading we are required to give section 4–9–

---

6. Indeed, as Platinum Plus and Heartbreakers observe in their own Reply Brief: "The mere fact that the County can enact land use ordinances under its police power does not mean this ordinance is not a zoning ordinance."

25, compels us to conclude that this type of ordinance may be properly enacted pursuant to the County's police powers.

We note that North Carolina has addressed this issue under similar circumstances and arrived at the same conclusion. In *Onslow County v. Moore*, 129 N.C.App. 376, 499 S.E.2d 780, *review denied*, 525 S.E.2d 453 (N.C.1998), the appellants argued that a county ordinance regulating the location of sexually oriented businesses was "a zoning ordinance, and as such is invalid since it was not adopted pursuant to a comprehensive zoning plan for the County." *Id.* at 784. The North Carolina Court of Appeals held that " '[c]ounties may enact ordinances regulating land use in two fashions:  one, pursuant to a comprehensive zoning plan, ... **and** two, pursuant to their police powers ...' " *Id.* at 785 (quoting *Maynor v. Onslow County*, 127 N.C.App. 102, 488 S.E.2d 289, *appeal dismissed*, 347 N.C. 268, 493 S.E.2d 458, *cert. denied*, 347 N.C. 400, 496 S.E.2d 385 (N.C.1997)) (internal citations omitted).

The trial court relied on both *Maynor v. Onslow County* and *Onslow County v. Moore* and we find that reliance appropriate.

Furthermore, we note the Comprehensive Planning Act does not require that counties zone their entire area. S.C.Code Ann. § 6-29-330 (Supp.2001) ("A county **may** exercise the powers granted under the provisions of this chapter in the total unincorporated area **or specific parts of the unincorporated area.**") (emphasis added). Thus, the Act envisions that a county may, like the County in the instant case, have both zoned and unzoned areas. If we accepted Platinum Plus and Heartbreakers' contention that any land use regulation not enacted pursuant to the Comprehensive Planning Act is unlawful, the effect would be to disallow a county from regulating its unzoned land in any way. We find the Legislature clearly could not have intended that result. Instead, it is logical that the County should be able to enact, pursuant to its police powers, one ordinance to regulate sexually oriented businesses and have the ordinance apply to **both** zoned and unzoned areas.

Platinum Plus and Heartbreakers also contend that the detailed specifications set out in the Comprehensive Planning Act, *see* §§ 6-29-710 through -960, indicate the only way a

County can regulate land use is through a comprehensive plan; they cite *I'On, L.L.C. v. Town of Mt. Pleasant,* 338 S.C. 406, 526 S.E.2d 716 (2000), in support of their argument.

The *I'On* Court was faced with the issue of whether zoning by initiative and referendum is allowed in South Carolina. The Court concluded that the detailed nature of zoning acts like the Comprehensive Planning Act "indicates a legislative intent that zoning matters must be decided only in the manner specified in those acts." *Id.* at 415, 526 S.E.2d at 721. *I'On* held that by passing the Comprehensive Planning Act, the Legislature did not intend to allow voters to enact more complex zoning measures by initiative and referendum. Significantly, the Court stated the following:

> [T]he comprehensive and detailed nature of [the Comprehensive Planning Act's] provisions ... reveals our Legislature's intent that zoning decisions **should be made by a cross-section of unbiased officials after careful deliberation.** Whether the zoning decisions involve the development of an overall zoning system or master plan, or the application of established rules in a particular case, [the Comprehensive Planning Act] is designed to allow ample planning and ensure due process for all interested parties.

*Id.* at 416, 526 S.E.2d at 721 (emphasis added).

*I'On* does not stand for the proposition that **any** ordinance affecting land use must be part of the comprehensive plan and enacted pursuant to the Comprehensive Planning Act. Instead, *I'On* simply held that land use regulation cannot be effected via the referendum and initiative process. Thus, *I'On* is not dispositive. To accept Platinum Plus and Heartbreakers' expansive reading of *I'On* would necessarily eviscerate a County's ability to exercise its police power if that exercise in any way impacted land use. Moreover, we note that in the instant case, the Ordinance was passed "by a cross-section of unbiased officials after careful deliberation," with the involvement of the County Planning Commission, and therefore does not run afoul of the dangers with which *I'On* was concerned. *See id.* at 416–17, 526 S.E.2d at 721 (indicating that an initiative and referendum process could result "in arbitrary decisions and patchwork zoning with little rhyme or reason").

In sum, the Comprehensive Planning Act does not preempt passage of the Ordinance outside of the County's Zoning Ordinance. *See Bugsy's, supra; Fine Liquors, supra.* Therefore, we affirm the trial court's holding that the County permissibly enacted the Ordinance pursuant to its police powers.[7] *See* § 4–9–25; *Onslow County v. Moore, supra; Maynor v. Onslow County, supra.*

## 2. The Ordinance's Location Requirement is Constitutional

Platinum Plus and Heartbreakers argue that the Ordinance is unconstitutional because it violates: (1) Article VIII, section 14 of the South Carolina Constitution; and (2) the First Amendment of the U.S. Constitution. We disagree.

First, Platinum Plus and Heartbreakers contend that this Court's decisions in *Diamonds v. Greenville County,* 325 S.C. 154, 480 S.E.2d 718 (1997), and *Connor v. Town of Hilton Head,* 314 S.C. 251, 442 S.E.2d 608 (1994), apply to the instant case. In both *Diamonds* and *Connor,* the Court held ordinances which were **absolute bans** unconstitutional; in *Diamonds,* Greenville County banned public nudity, and in *Connor,* Hilton Head banned nude dancing. The Court found in both cases that Article VIII, § 14 of the South Carolina Constitution prohibited a municipality from proscribing conduct that is not unlawful under State criminal laws governing the same subject. Because state criminal laws addressing the subject of public nudity did not prohibit all public nudity, or nude dancing, the ordinances at issue criminalized conduct that was not unlawful under State law. Therefore, the Court concluded that Greenville County and Hilton Head had exceeded their power in enacting the ordinances.

In the instant case, however, the Ordinance does not outright ban either nude dancing or sexually oriented businesses. Instead, it regulates the location of such businesses. Accordingly, *Diamonds* and *Connor* are clearly inapplicable.[8]

---

7. Because we find the Ordinance is not part of the County's Zoning Ordinance, it is unnecessary to rule on Platinum Plus and Heartbreakers' arguments regarding the trial court's alternative rulings.

8. In other words, while the ordinances at issue in *Diamonds* and *Connor* were content-based, the Ordinance in the instant case is con-

■ Platinum Plus and Heartbreakers next argue the Ordinance violates their First Amendment rights. Primarily, Platinum Plus and Heartbreakers maintain that the County was not justified in increasing the location requirement from 1000 feet to 1500 feet because County Council did not have any data to rely on for this increased distance. Thus, they claim the Ordinance is not "narrowly tailored."

Platinum Plus and Heartbreakers' First Amendment arguments are governed by the United States Supreme Court's decisions in *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986), and *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976). These decisions hold that ordinances designed to regulate the secondary effects of sexually oriented businesses are content-neutral and are properly analyzed as "time, place, and manner" regulations. *See, e.g., Renton,* 475 U.S. at 48, 106 S.Ct. 925 (regulations which are **justified** without reference to the content of the regulated speech are "content neutral"); *Centaur, Inc. v. Richland County,* 301 S.C. 374, 379, 392 S.E.2d 165, 168 (1990). The appropriate inquiry,[9] therefore, is whether the Ordinance "is designed to serve a substantial governmental interest and allows for reasonable alternative avenues of communication." *Renton,* 475 U.S. at 50, 106 S.Ct. 925; *see also Harkins* 340 S.C. at 614, 533 S.E.2d at 890 ("sexually oriented business regulations will be upheld if they are designed to serve the substantial govern-

tent-neutral. *See Connor,* 314 S.C. at 255 n. 2, 442 S.E.2d at 610 n. 2 (where the Court noted that because Hilton Head's ordinance targeted the sexual or erotic message of nude dancing, the ordinance was not content-neutral, and then contrasted that with an ordinance justified by reference to the secondary effects of protected speech, which is content-neutral).

**9.** Although the parties discuss the four-pronged standard of *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), in this context, the *Renton* standard is the appropriate one. *See International Eateries of Am., Inc. v. Broward County,* 941 F.2d 1157, 1161 n. 2 (11th Cir.1991), *cert. denied,* 503 U.S. 920, 112 S.Ct. 1294, 117 L.Ed.2d 517 (1992) (noting the "considerable confusion" over whether to apply the *O'Brien* analysis or the *Renton* analysis, but concluding that *Renton* applied where the regulation was similar to that found in *Renton,* and in any event, that "the answer should be the same regardless of which analysis is used").

mental interest of preventing harmful secondary effects and they allow for reasonable avenues of communication").

The Ordinance clearly meets the *Renton* standard. The County's interest in combating the secondary effects of sexually oriented businesses is, undoubtedly, a substantial one. *See Renton,* 475 U.S. at 50, 106 S.Ct. 925 ("A city's 'interest in attempting to preserve the quality of urban life is one that must be accorded high respect.' ") (citation omitted). Moreover, we note that in *Harkins,* the Court specifically decided that the Ordinance did not "zone the adult businesses out of existence." *Harkins,* 340 S.C. at 620–21, 533 S.E.2d at 893.

■ Nonetheless, Platinum Plus and Heartbreakers maintain that the County lacked evidence for the 1500–foot requirement. We disagree.

The First Amendment requires only that whatever evidence the County relies upon is "reasonably believed to be relevant to the problem" the County is addressing. *Renton,* 475 U.S. at 51–52, 106 S.Ct. 925. "This is not to say that a municipality can get away with shoddy data or reasoning. The municipality's evidence must fairly support the municipality's rationale for its ordinance." *Alameda Books,* 535 U.S. 425, 438, 122 S.Ct. 1728, 1736, 152 L.Ed.2d 670 (2002) (plurality opinion). Furthermore, the County " 'must be allowed a reasonable opportunity to experiment with solutions to admittedly serious problems.' " *Renton,* 475 U.S. at 52, 106 S.Ct. 925 (quoting *American Mini Theatres,* 427 U.S. at 71, 96 S.Ct. 2440).

Here, the County relied upon, *inter alia,* several summaries of other cities' secondary effects studies as well as the *Renton* decision itself. The evidence that County Council relied upon clearly supports its rationale for the ordinance. For instance, the Los Angeles study recommended more than 1000 feet separating sexually oriented businesses from one another and a minimum of 500 feet separation from schools, parks, churches, and residential areas. Thus, Platinum Plus and Heartbreakers are simply incorrect when they maintain there is not data in the studies to justify the 1500–foot requirement. Furthermore, it is undisputed that the record in the instant case reveals the County Planning Commission considered both the 1000–foot and 1500–foot requirements and concluded that,

with either distance, there was a reasonable opportunity for these businesses to locate in the County.

As Justice Kennedy observed in *Alameda Books:*

It is well documented that multiple adult businesses in close proximity may change the character of a neighborhood for the worse. Those same businesses spread across the city may not have the same deleterious effects. At least in theory, a dispersal ordinance causes these businesses to separate rather than to close, so negative externalities are diminished but speech is not.

*Alameda Books*, 535 U.S. at 446, 122 S.Ct. at 1740 (Kennedy, J., concurring in judgment). The County in this case has chosen to disperse sexually oriented businesses with a 1500–foot requirement. In our opinion, the County is free "to experiment" with this distance provided that reasonable avenues of communication remain. *Renton, supra.*

In sum, we find the Ordinance is constitutional.[10]

### 3. The County Is Not Estopped from Enforcing the Ordinance

Platinum Plus and Heartbreakers argue that the County should be estopped from enforcing the Ordinance against them because they received certificates of occupancy in between the time the original *Harkins* decision and the clarified *Harkins* decision were filed. We disagree.

As a general rule, estoppel does not lie against the government to prevent the due exercise of its police power or to thwart the application of public policy. *Grant v. City of Folly Beach*, 346 S.C. 74, 551 S.E.2d 229, (2001); *South Carolina Dep't of Soc. Servs. v. Parker*, 275 S.C. 176, 268 S.E.2d 282 (1980). However, this does not mean that estoppel cannot ever apply against a government agency. *See, e.g., Landing Dev. Corp. v. City of Myrtle Beach*, 285 S.C. 216, 329 S.E.2d 423 (1985). To prove estoppel against the government, the relying party must prove: (1) lack of knowledge and of the

---

**10.** Although Platinum Plus and Heartbreakers raise constitutional arguments regarding both their "vested rights" and the Ordinance's amortization period, we decline to address them. Because neither club was in existence at the time the Ordinance was enacted, they have no standing to assert such arguments.

means of knowledge of the truth **as to the facts in question,** (2) justifiable reliance upon the government's conduct, and (3) a prejudicial change in position. *E.g., Grant, supra.*

Platinum Plus and Heartbreakers argue that because the County issued certain permits to them, the County should be estopped from enforcing the ordinance. This Court recently rejected a similar argument in *Grant. See Grant,* 346 S.C. at 82, 551 S.E.2d at 233 (issuance of a building permit did not estop the City since Grant had the means to ascertain the flood limitations on his building).

■ Platinum Plus and Heartbreakers also contend that because Nomikos and other County officials communicated to them that the Ordinance had been declared unconstitutional by this Court and therefore there was no ordinance regulating sexually oriented businesses, the County is estopped from enforcing the ordinance. However, we hold that estoppel against the County does not lie under the unusual facts of this case.

■ "The general rule is that administrative officers of the state cannot estop the state through mistaken statements of law." *Kelso & Irwin, P.A. v. State Ins. Fund,* 134 Idaho 130, 997 P.2d 591, 599 (2000) (citing *Austin v. Austin,* 350 So.2d 102, 105 (Fla.Ct.App.1977); *Rainaldi v. Public Emp. Retirement Bd.,* 115 N.M. 650, 857 P.2d 761, 769 (1993)); *see also Earl Township v. Reading Broad., Inc.,* 770 A.2d 794, 798 (Pa.Commw.Ct.2001), *appeal denied,* 568 Pa. 637, 793 A.2d 910 (2002) (where the Township's solicitor expressed his legal opinion that the broadcasting company was not required to obtain a permit for the construction of a new television broadcasting tower, the court held that the mutual mistake of law, as opposed to a mistake of fact, would not support a claim of estoppel); *see generally* 28 Am.Jur.2d *Estoppel and Waiver* § 142 (1966) ("In general, an estoppel cannot be asserted against a government entity based on mistaken statements of law. . . ."); 31 C.J.S. *Estoppel and Waiver* § 91 (1996) (representations or opinions on matters of law not generally basis for estoppel).

The County's representation that the Ordinance had been declared **completely** unconstitutional was obviously a statement of law, and therefore cannot be the basis for estoppel.

*Id.* The instant case is a perfect example of why estoppel against the government should not be based on an erroneous statement of the law, because neither the County nor the appellants could have had "the means of knowledge of the truth" while the *Harkins* opinion was on rehearing. Thus, we find the County should not be estopped based on its misunderstanding of **the law** handed down by this Court, which was subsequently **clarified** by this Court on denial of a petition for rehearing.[11]

An estoppel claim against the County for representations made in between the two *Harkins* opinions is simply unavailable as a matter of law. Accordingly, the trial court correctly granted summary judgment to the County on the estoppel claims.

### 4. Summary Judgment Was Properly Granted on the Counterclaims

Next, Platinum Plus and Heartbreakers argue the trial court erred in granting summary judgment on their counterclaims because there were disputed material issues of fact which preclude summary judgment. In our opinion, however, these fact findings are either clearly undisputed or not material to resolution of the issues. *See* Rule 56(c), SCRCP (judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law"). In addition, we agree with the County that Platinum Plus has not appealed several of the trial court's rulings which preclude, as a matter of law, its negligence claim.[12] *E.g., ML–Lee Acquisition Fund, L.P. v. Deloitte & Touche,* 327 S.C. 238, 489 S.E.2d 470 (1997) (unappealed ruling is the law of the case).

---

11. Furthermore, as Platinum Plus and Heartbreakers acknowledge in their brief, they received the permits while the constitutionality of the Ordinance was being questioned; hence, they had no right to rely on the misstatements made by the County.

12. The trial court found Platinum Plus' counterclaims were barred by the doctrine of illegality, the South Carolina Tort Claims Act, and the doctrine of unclean hands. The trial court also found no duty of care owed by the County to Platinum Plus.

### 5. The Trial Court Properly Quashed the Subpoenas for County Council Members

█ Platinum Plus and Heartbreakers sought to take depositions of those who were members of County Council when the Ordinance was passed. The trial court granted the County's request to quash the subpoenas. Platinum Plus and Heartbreakers argue this was error because they were entitled to discover from the Council members whether the Ordinance was designed to prevent harmful secondary effects. We disagree.[13]

In *Bear Enterprises v. County of Greenville*, 319 S.C. 137, 459 S.E.2d 883 (Ct.App.1995), the Court of Appeals commented on the propriety of using Council members' deposition testimony regarding their decisions:

> We note that Bear deposed Council members and presented their testimony as evidence to support Bear's argument that Council's decision [against rezoning] was arbitrary. We are aware of no authority allowing someone challenging action by Council to interrogate members individually to impeach Council's decision. The governing body of a municipality acts as a collective body, not as individuals, and decisions made in this fashion are the product of debate and compromise. If individuals are not satisfied with decisions made by members of a municipal government within the limits of the law, their remedy is at the polls, not the courts. Although we feel it was inappropriate to examine Council members in this manner, the County did not object to the procedure in this case.

*Bear Enterprises v. County of Greenville*, 319 S.C. 137, 139 n. 1, 459 S.E.2d 883, 885 n. 1 (Ct.App.1995). Moreover, the Supreme Court in *Renton* made clear that an "alleged illicit legislative motive" to suppress protected speech is not a proper basis for finding a statute unconstitutional. 475 U.S. at 47–48, 106 S.Ct. 925 (citation omitted); *see also United*

---

**13.** We reject the County's assertion that this issue is procedurally barred because Platinum Plus and Heartbreakers failed to notice the appeal of the trial court's order quashing the subpoenas. Because they are appealing from a final judgment, this Court is permitted to review any intermediate order or decree necessarily affecting the judgment not before appealed from. *See* S.C.Code Ann. § 14–3–330(1) (1976); *Lancaster v. Fielder*, 305 S.C. 418, 421, 409 S.E.2d 375, 377 (1991).

*States v. O'Brien,* 391 U.S. 367, 383, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968) ("Inquiries into congressional motives or purposes are a hazardous matter.").

What County Council members' motivations were for passing the Ordinance simply is not a proper inquiry. *Id.; Bear Enterprises, supra.* Accordingly, the trial court did not err in quashing the subpoenas.

## APPEAL OF DIAMONDS

█ Unlike Platinum Plus and Heartbreakers, Diamonds was in operation at the time the Ordinance was passed. It therefore fell under Section 12(g) of the Ordinance which provides in part: "Any sexually oriented business lawfully operating on the effective date of this ordinance that is in violation of subsection[s] (a) through (f) of this section shall be deemed a nonconforming use. The nonconforming use will be permitted to continue for a period not to exceed one (1) year ..." Pursuant to this subsection, Diamonds was supposed to cease operating as a sexually oriented business by February 7, 1996. However, because of the *Harkins* litigation, the County did not begin to enforce the Ordinance until August 2000, when the County sought an injunction against Diamonds. Diamonds counterclaimed for injunctive and declaratory relief alleging that the Ordinance is unconstitutional. The trial court granted summary judgment in the County's favor on all claims.

In its statement of the issue on appeal, Diamonds argues that the Ordinance is unconstitutional as an impermissible taking because "it divests nonconforming use rights, which, under statutory law, may only be divested by zoning provisions." Diamonds appears to assert that because the Ordinance is not a "zoning ordinance," it cannot create a nonconforming use since a nonconforming use may only be accomplished via a zoning regulation enacted pursuant to the Comprehensive Planning Act. *See* § 6–29–730.

We reject Diamonds' argument, because, as discussed above, the Comprehensive Planning Act does not preempt the County from enacting an ordinance, pursuant to its police power, which impacts land use. Moreover, no taking has

occurred since Diamonds "can continue in its existing location, the only restriction is that it cannot operate as an adult use ..." *Restaurant Row Associates v. Horry County,* 335 S.C. 209, 218, 516 S.E.2d 442, 447, *cert. denied,* 528 U.S. 1020, 120 S.Ct. 528, 145 L.Ed.2d 409 (1999). Therefore, Diamonds cannot contend that the Ordinance has deprived it of all economically viable use of its land. *See, e.g., Westside Quik Shop, Inc. v. Stewart,* 341 S.C. 297, 305–06, 534 S.E.2d 270, 274, *cert. denied,* 531 U.S. 1029, 121 S.Ct. 606, 148 L.Ed.2d 518 (2000) (if a land-use regulation substantially advances legitimate government interests and does not deny the owner of all economically viable use of his land, it does not constitute a taking).

Accordingly, Diamonds' argument that a taking has occurred is without merit.

## CONCLUSION

The trial court's grant of summary judgment to the County on all claims is

**AFFIRMED.**

TOAL, C.J., BURNETT, PLEICONES, JJ., and Acting Justice DIANE S. GOODSTEIN, concur.