504 S.E.2d 311

**Catherine ROCHE, as Personal Representative for the Estate of George Roche, Petitioner,**

v.

**YOUNG BROTHERS, INC., OF FLORENCE, d/b/a Days Inn East, Respondent.**

No. 24829.

Supreme Court of South Carolina.

Heard May 27, 1998.

Decided Aug. 10, 1998.

William P. Hatfield and Gary I. Finklea, both of The Hyman Law Firm, Florence, for petitioner.

William Reynolds Williams, and C. Craig Young, both of Willcox, McLeod, Buyck & Williams, Florence, for respondent.

## ON WRIT OF CERTIORARI TO
## THE COURT OF APPEALS

TOAL, Justice:

This case involves a default judgment in a negligence action. George Roche originally brought this negligence action against Respondent Young Brothers, d/b/a Days Inn East ("Young Brothers"), as a result of a slip-and-fall accident in Young Brothers' motel parking lot. Petitioner Catherine Roche, as personal representative of her husband's estate, appeals the Court of Appeals' decision that Young Brothers' consent was required prior to the circuit court appointing a special referee to consider the damages matter. We reverse and reinstate the special referee's order.

### FACTUAL/PROCEDURAL BACKGROUND

On March 19, 1990, Roche slipped and fell in the parking lot of Young Brothers' motel located in Florence, South Carolina. Roche filed suit against Young Brothers in circuit court on August 31, 1990. Young Brothers failed to answer Roche's complaint. A default was entered against Young Brothers on November 2, 1990. Without notice to Young Brothers, a damages hearing was held before the circuit court on Febru-

ary 6, 1992. The circuit court awarded Roche $15,000.00 in actual damages and $30,000.00 in punitive damages.

On February 14, 1992, Young Brothers filed a motion to set aside the default judgment under Rule 60(b), SCRCP. Young Brothers argued that the judgment should be set aside because service of process was not perfected, and, in the alternative, a new damages hearing should be granted because it did not receive notice of the hearing. The circuit court denied the motion. In July 1992, Young Brothers appealed the judgment to the Court of Appeals. The Court of Appeals reversed the circuit court's default judgment, finding service of process had not been perfected. *Roche v. Young Bros., Inc. of Florence,* 313 S.C. 356, 437 S.E.2d 560 (Ct.App.1993) (*"Roche I"*). We reversed the Court of Appeals and reinstated the entry of default. *Roche v. Young Bros., Inc. of Florence,* 318 S.C. 207, 456 S.E.2d 897 (1995) (*"Roche II"*). However, we vacated the default judgment and awarded a new damages hearing because Young Brothers had failed to receive notice. Thus, the case was remanded back to the circuit court for a new damages hearing.

In April 1995, Roche filed an *ex parte* motion with the circuit court requesting that the damages matter be referred to Eugene A. Fallon, Jr., as special referee. The circuit court granted the motion. Young Brothers did not receive notice of Roche's motion prior to the circuit court issuing its order of reference. Young Brothers later made a motion before the circuit court to have the reference withdrawn. The motion was denied.

The damages hearing was held before special referee Fallon on June 19, 1995. Young Brothers appeared and was represented by counsel. On July 28, 1995, the special referee, by written order, awarded Roche $25,000.00 in actual damages and $75,000.00 in punitive damages.

On appeal before the Court of Appeals, Young Brothers raised seven issues challenging the special referee's order. The Court of Appeals only addressed the issue concerning the circuit court's authority to refer the case to a special referee without the consent of the defaulting party. The Court of Appeals reversed, finding consent was necessary since Young Brothers made an appearance in the case. *Roche v. Young*

*Bros., Inc. of Florence,* 326 S.C. 488, 485 S.E.2d 110 (Ct.App. 1997) (*"Roche III"*).

We granted Roche's petition for a writ of certiorari to address the following issue:

Is the consent of a defaulting party required for the circuit court to refer a case to a special referee, where the defaulting defendant has made an appearance in the case?

## LAW/ANALYSIS

### A. CONSENT

■ Roche argues that the Court of Appeals erred in holding that where the defaulting party has made an appearance in the case, the consent of that party must be obtained before the circuit court may refer the case to a special referee. We agree.

The circuit court's authority to appoint a special referee is supplied by S.C.Code Ann. § 14–11–60 (Supp.1997), which states:

In case of a vacancy in the office of master-in-equity *or in case of the disqualification or disability of the master-in-equity* from interest or any other reason for which cause can be shown the presiding circuit court judge, **upon agreement of the parties,** may appoint a special referee in any case who as to the case has all the powers of a master-in-equity. The special referee must be compensated by the parties involved in the action.

(emphasis added). The emphasized language was added by amendment in 1988. (1988 Act No. 678, Part II, § 6, eff. January 1, 1989).

The appointment and powers of special referees are further governed by Rule 53, SCRCP. Rule 53 provides in pertinent part:

(a) *Appointment and Compensation.* As used in these rules the word "master" includes a referee.... The court in which any action is pending may appoint a special master for that action; but where practicable the master appointed by statute for that county, or for that court, or for the particular type of action involved shall act. The court may

in its discretion appoint as a special master **a person agreed upon by the parties**. . . .

(b) *Reference.* In an action **where the parties consent or in a default case,** any and all issues, whether of law or fact, may be referred to a master by order of a judge or the clerk of court.

(emphasis added).

The problem in this case lies in reconciling the language in section 14–11–60 and Rule 53(a) with that in Rule 53(b). Section 14–11–60 and Rule 53(a) seem to require, without exception, the agreement of the parties prior to the appointment of a special referee. Rule 53(b), on the other hand, suggests that consent is not required in a default situation. This interpretation of Rule 53(b) was confirmed in *First Palmetto State Bank and Trust Company v. Boyles,* 302 S.C. 136, 138, 394 S.E.2d 313, 314 (1990) where we held that Rule 53(b) "authorizes the circuit court to refer an action to a master-in-equity (1) by consent of the parties, (2) if there is a default, (3) in actions with complicated issues to be tried before a jury, and (4) in all other actions, upon application of any party or upon the court's motion." 302 S.C. at 138, 394 S.E.2d at 314.

This Court's primary function in interpreting a statute is to ascertain the intent of the legislature. *State v. Baker,* 310 S.C. 510, 427 S.E.2d 670 (1993). A statute as a whole must receive a practical, reasonable, and fair interpretation consonant with the purpose, design, and policy of the lawmakers. *Id.* Generally, statutes are to be construed with reference to the whole system of law of which they form a part. *See* 82 C.J.S. *Statutes* § 362 (1953). In construing a statute, this Court is constrained to avoid an absurd result. *South Carolina Tax Comm'n v. Gaston Copper Recycling Corp.,* 316 S.C. 163, 447 S.E.2d 843 (1994).

It is well settled that by suffering a default, the defaulting party is deemed to have admitted the truth of the plaintiff's allegations and to have conceded liability. *Howard v. Holiday Inns Inc.,* 271 S.C. 238, 246 S.E.2d 880 (1978); *Schenk v. National Health Care, Inc.,* 322 S.C. 316, 471 S.E.2d 736 (Ct.App.1996); *State ex rel. Medlock v. Love Shop, Ltd.,* 286 S.C. 486, 334 S.E.2d 528 (Ct.App.1985). Though a default-

ing party may be entitled to notice of the damages hearing, that party is limited to cross-examining witnesses and objecting to evidence. *Howard,* 271 S.C. 238, 246 S.E.2d 880; *Ammons v. Hood,* 288 S.C. 278, 341 S.E.2d 816 (Ct.App.1986). Moreover, once a party defaults, the trial court "may conduct such hearings or order such references as it deems necessary and proper" to enter the default judgment. Rule 55(b)(1), SCRCP. Thus, although section 14–11–60 and Rule 53(a) do not specifically address default situations, it would be anomalous to interpret these provisions as requiring the consent of a defaulting party whenever the circuit court chose to refer the case to a special referee.

Not requiring the consent of a defaulting party is evidenced elsewhere in the Code and in the rules of civil procedure. For example, S.C.Code Ann. § 14–11–85 (Supp.1997) provides that an appeal from the judgment of a master-in-equity must be to the circuit court unless the parties not in default consent in writing or on the record to a direct appeal to the Supreme Court. Another example is found in Rule 38(d), SCRCP, which provides in pertinent part: "A demand for trial by jury made as herein provided may not be withdrawn without the consent of the parties, **except where an opposing party is in default under Rule 55(a).**" (emphasis added).

The Court of Appeals nevertheless suggests that the instant case does not fall within the "classic default" situation and, therefore, is not entitled to be excepted from the general consent requirement. The Court of Appeals explains that this is not a classic default situation because Young Brothers made an appearance in the case. As such, it would not have been unduly burdensome for Roche to have obtained Young Brothers' consent. We disagree.

Young Brothers clearly defaulted by failing to answer Roche's complaint within the prescribed time. Young Brothers' status as a defaulting party was not vitiated simply because it later chose to challenge the default judgment rendered against it. Contrary to the Court of Appeals' opinion, Young Brothers' default was in every way classic, as evidenced by our affirmation of the entry of default in *Roche II.* Thus, there is no support for treating this case any differently from other default situations. To hold otherwise

would mean that a defaulting party could acquire the right to veto the circuit court's reference authority simply by making some kind of appearance in the case. This would be an incongruous result.

Young Brothers nevertheless argues that requiring the agreement of both parties would have the beneficial effect of avoiding the appointment of referees who are not impartial. However, a defaulting party does not lose its right to have an impartial master or referee, and may still raise an objection based on such grounds. In fact, Young Brothers made a motion before the circuit court to have special referee Fallon's judgment vacated based on evidence that he was biased. The circuit court denied Young Brothers' motion, and Young Brothers subsequently raised the issue before the Court of Appeals.

We hold that Young Brothers' consent was not required prior to the circuit court appointing special referee Fallon. We therefore reverse the Court of Appeals on this issue.

## B. REMAINING ISSUES

Because it reversed the trial court on the consent issue, the Court of Appeals did not address the remaining issues raised by Young Brothers. We have complete confidence that the Court of Appeals could very capably address these issues on remand. However, in the interest of bringing finality to this litigation, we will address the remaining issues here.

The other issues raised to the Court of Appeals include the following: (1) whether the circuit court was without authority to issue the *nunc pro tunc* order permitting entry of judgment on the order of special referee Fallon; (2) whether the South Carolina Code of Judicial Conduct requires the recusal of the special referee in this case; (3) whether the order of the special referee is not supported by the pleadings and is based on inadmissible evidence; (4) whether the order contains findings and conclusions contrary to the admitted pleadings and evidence, thus, denying the defendant due process of law; (5) whether the judgment for actual and punitive damages is excessive, thereby warranting a new damages hearing; and (6) whether the punitive damages are not justifiable in this case and should not have been awarded.

In its Order of Reference, the circuit court had required the special referee to issue his final order within thirty days after the damages hearing had been held. The special referee issued his order thirty-nine days after the hearing. Roche filed a motion with the circuit court to extend the time in which the special referee could file his order. The circuit court granted the motion and issued a *nunc pro tunc* order. Young Brothers argues that the circuit court was without authority to issue the *nunc pro tunc* order increasing the time for the special referee to issue his final order. We disagree.

The failure of the special referee to act within the times prescribed in the order of reference does not void the order of reference, but simply restores discretion to the circuit court as to the manner of disposing of the case. *Lyons v. Butler,* 288 S.C. 498, 343 S.E.2d 630 (Ct.App.1986); *Cf. Smith v. Ocean Lakes Family Campground,* 315 S.C. 379, 433 S.E.2d 909 (Ct.App.1993) (finding that the order of reference was voided because, unlike *Lyons,* the order of reference stated that it would become "null and void" if the master failed to file his order within the time prescribed). We therefore find the trial court did not abuse its discretion in issuing the *nunc pro tunc* order in this case.

Second, Young Brothers contends that special referee Fallon's impartiality was questionable for two reasons: (1) special referee Fallon received a similar award in a previous personal injury action (*Leasure v. Graham,* 93–CP–21–1000) where a member of Roche's attorney's firm served as special referee, and (2) special referee Fallon transmitted a copy of his order to Young Brothers' attorney using his law firm letterhead which reads: "THE FALLON LAW FIRM ... LAWYERS ON THE SIDE OF INJURED PEOPLE." As such, Young Brothers argues that Canon 3 of Rule 501 of the South Carolina Code of Judicial Conduct required the recusal of special referee Fallon. We disagree.

Under the Applicability section of Rule 501, SCACR, a special referee is considered a "judge." Moreover, pursuant to Canon 3(E)(1)(a) of Rule 501, SCACR, a judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to, instances where he has a personal bias or prejudice

against a party. *See also Murphy v. Murphy*, 319 S.C. 324, 461 S.E.2d 39 (1995). It is not enough for a party seeking disqualification to simply allege bias; the party must show some evidence of that bias or prejudice. *Mallett v. Mallett*, 323 S.C. 141, 473 S.E.2d 804 (Ct.App.1996). If there is no evidence of judicial prejudice, a judge's failure to disqualify himself will not be reversed on appeal. *Ellis v. Procter & Gamble Dist. Co.*, 315 S.C. 283, 433 S.E.2d 856 (1993). A judge's impartiality might reasonably be questioned when his factual findings are not supported by the record. *Id.*

■ In the instant case, special referee Fallon only used his law firm's stationery to print the cover letter that transmitted his order to counsel for the parties. The order itself was properly printed on plain paper. Moreover, the transmittal letter does not reasonably put into question Fallon's impartiality. Presumably, any attorney associated with a plaintiff-oriented firm would frequently advocate the rights of injured people, and advertise as such. The fact that an attorney is specialized as a plaintiff or defense attorney does not automatically impugn that attorney's impartiality once he or she assumes the role of special referee.

■ As for the *Leasure* matter, it should first be noted that Florence County, with a population of less than 130,000, has chosen not to create the office of master-in-equity. *See* S.C.Code Ann. § 14–11–10 (Supp.1997) (master-in-equity court is required only in counties with populations of at least 130,000). Thus, referees will invariably be appointed who were involved in prior, unrelated legal matters with the attorneys appearing before them. If this were the sole basis for disqualification, such counties would be severely hampered in their ability to appoint special referees. Young Brothers nevertheless suggests that a *quid pro quo* was implicit because the damages award in this case was similar to the award in the *Leasure* matter. We, however, find no evidence of bias or prejudice on the part of the special referee. The record clearly supports the special referee's factual findings and award of damages.

■ Third, Young Brothers argues that the special referee's order was not supported by the pleadings and was based on inadmissible hearsay evidence in the form of medical

records and bills. We disagree. The conduct of the trial, including the admission and rejection of testimony, is largely within the trial judge's sound discretion, the exercise of which will not be disturbed on appeal absent an abuse of that discretion or the commission of a legal error that results in prejudice for appellant. *Baber v. Greenville Co.*, 327 S.C. 31, 488 S.E.2d 314 (1997). At the damages hearing, Mrs. Roche testified extensively about her husband's injuries and the nature of the medical treatment he received following the accident. The medical records and bills corroborated Mrs. Roche's testimony in this regard. We therefore find the evidence was not prejudicial to Young Brothers. *Starkey v. Bell*, 281 S.C. 308, 315 S.E.2d 153 (Ct.App.1984) (though testimony may constitute inadmissible hearsay evidence, no prejudice is shown when it merely corroborates other evidence admitted in the case). We further conclude that the special referee's order was consistent with the admitted pleadings and was not a denial of due process of law.

Young Brothers next argues that the special referee improperly allowed Mrs. Roche to express her opinion concerning her husband's medical condition. We disagree. Generally, an ordinary observer who has had the opportunity for observation may state the health or physical condition of another, who has been injured, to enable the fact finder to draw a correct inference. 32 C.J.S. *Evidence* § 552 (1996). However, a non-expert witness may not testify to matters that require special knowledge, skill, and experience. *Id.* We find that Mrs. Roche's testimony involved her ordinary observations of her husband's physical condition following the accident. Thus, it was properly allowed.

Finally, Young Brothers contends that the special referee's order was improperly based on speculative and conjectural testimony and that the judgment for actual and punitive damages was excessive and unjustifiable. Upon examining the record, we find that Young Brothers was not unfairly prejudiced by any speculative or conjectural testimony. We further find the evidence supports the referee's judgment for actual and punitive damages. *See Miller v. City of West Columbia*, 322 S.C. 224, 231, 471 S.E.2d 683, 687 (1996) ("The appellate court will intervene only where the verdict is so grossly excessive and the amount awarded is so shockingly

disproportionate to the injuries to indicate that it was the result of caprice, passion, prejudice, or other considerations not found on the evidence.").

## CONCLUSION

Based on the foregoing, the Court of Appeals' decision is **REVERSED,** and the special referee's order is reinstated.

FINNEY, C.J., MOORE and BURNETT, JJ., and GEORGE T. GREGORY, Jr., Acting Associate Justice, concur.