PROTECTION AND ADVOCACY FOR PEOPLE
WITH DISABILITIES, INC., Appellant,

v.

Beverly A. H. BUSCEMI, Ph.D., in her official capacity as State
Director, South Carolina Department of Disabilities and Spe-
cial Needs and The South Carolina Department of Disabilities
and Special Needs, and Kelly Hanson Floyd, Nancy Banov, W.
Robert Harrell, Rick Huntress, Deborah McPherson and Dr.
Otis Speight in their Official Capacities as Members of the
Department of Disabilities and Special Needs Commission,
Respondents.

Appellate Case No. 2015–000109
Opinion No. 5410

Court of Appeals of South Carolina.

Heard April 19, 2016
Filed June 8, 2016
Rehearing Denied August 22, 2016

Anna Maria Darwin, of Protection & Advocacy for People with Disabilities, Inc., of Greenville; Thornwell Simons, of Protection & Advocacy for People with Disabilities, Inc., of Columbia; Reid T. Sherard and David Curry Dill, both of Nelson Mullins Riley & Scarborough, LLP, of Greenville; and Phillips Lancaster McWilliams, of Nelson Mullins Riley & Scarborough, LLP, of Columbia; for Appellant.

William H. Davidson, II and Kenneth P. Woodington, both of Davidson & Lindemann, PA, of Columbia, for Respondents.

HUFF, A.C.J.:

Protection and Advocacy for People with Disabilities, Inc. (P&A) brought this declaratory judgment action against the Department of Disabilities and Special Needs, as well as the Department's Director, Beverly A. Buscemi, Ph.D., and members of the Department's Commission (collectively, DDSN) seeking an order requiring DDSN to allow P&A access to

medical information and records, including Medication Administration Records (MARs), of residents of Community Training Home (CTH) facilities housing developmentally disabled persons. From an order of the trial court dismissing the action, P&A appeals, asserting the trial court erred in (1) not giving effect to the statutorily authorized review of "plans of care" during Team Advocacy inspections, (2) interpreting S.C. Code Ann. § 43-33-350 to prevent P&A from conducting proper inspections as required by statute, (3) refusing to afford deference to P&A's interpretation of the term "plans of care," and (4) ignoring South Carolina public policy in preventing P&A from inspecting documents to protect the State's most vulnerable citizens. Upon examination of the relevant statutes, we find it is the clear intent of the General Assembly not to permit P&A to review individual medical records in the course of unannounced inspections of the living conditions of the residential facilities and, therefore, affirm the trial court.

## FACTUAL/PROCEDURAL BACKGROUND

P&A is a private, nonprofit corporation designated as South Carolina's protection and advocacy system for people with disabilities. As such, the General Assembly has provided P&A with certain powers and duties. S.C. Code Ann. § 43-33-310 to-400. At issue in this matter is P&A's authority to review personal medical records—particularly MARs—of CTH residents during P&A's statutorily authorized inspections of CTHs. In particular, the question presented is whether P&A's review of "plans of care" during an inspection, as provided in section 43-33-350(4) of the South Carolina Code, includes the personal medical records of CTH residents.

As part of its function, P&A conducts team advocacy inspections of facilities housing individuals with disabilities. Initially, P&A focused its efforts on Community Residential Care Facilities (CRCFs), which are licensed by the South Carolina Department of Health and Environmental Control (SCDHEC). However, it decided it needed to expand its team advocacy inspections into CTHs, which are licensed and operated by DDSN. P&A sent DDSN notice of such in November 2007.

In 2009, P&A was ready to start inspecting CTHs and sent DDSN a letter on June 11, 2009, stating its intention to begin unannounced visits to CTH IIs.[1] In its unannounced inspections of CRCFs, P&A had not been prevented from reviewing medical records.[2] In an August 12, 2009 letter to P&A, DDSN stated it supported the efforts of P&A to review living conditions; however, it further stated it did not agree team advocacy inspections of living conditions could involve the review of medical records. P&A sought to look at documents in CTHs concerning medical care in general, as well as MARS,[3] in part to ensure the residents were properly provided services involving food and medicine and were protected from neglectful situations. DDSN and P&A disagreed over the interpretation of the term "plans of care" as set forth in section 43–33–350(4) of the South Carolina Code, and DDSN informed its contracted providers of its position that CTH II staff were to release only the residential treatment/support plan of a resident—which it considered the same as the plan of care—to the Team Advocacy coordinator. Thereafter, team advocates inspecting CTHs were informed they could not view medical records. P&A brought this action, seeking an order requiring DDSN to allow it access to CTH residents' medical records during inspections, including but not limited to MARs. P&A maintained it had the authority to view medical records of CTH residents during inspections, whether or not the residents or their legal guardians consented to such. It argued, under the

1. There are two types of community training homes. In CTH Is, caregivers are trained private citizens who provide care in their own homes to, generally, no more than two individuals. CTH IIs have trained staff who provide 24–hour supervision, personal care, and training in a homelike environment for no more than four people.

2. CRCFs are under a different licensing scheme than CTHs, and unlike CTHs, P&A is under contract with the Department of Mental Health (DMH) to inspect CRCFs. DDSN, on the other hand, contracts with an organization designated by Medicare and Medicaid to perform quality assurance reviews, and each year every provider serving individuals with disabilities has an annual review.

3. Neither P&A nor DDSN submitted any examples of MARs at trial. However, a P&A employee testified a MAR was a document that showed the names of the medications, when the medication was supposed to be administered, how it was to be taken, and boxes for staff at the home to initial when the medication was given based on the day of the week and the time of the day.

statutory provision allowing it to review living conditions of these homes, including "plans of care," it had the right during its inspections to review the residents' medical records, in particular MARs. DDSN, on the other hand, contended the statutes do not allow P&A to view medical records of the residents during inspections, asserting that MARs and other medical records are records and not plans, the General Assembly has excluded the review of residents' private medical records during inspections, and the inability to review medical records has not stripped P&A of its ability to inspect living conditions.

The trial court, sitting without a jury, concluded P&A does not have authority to review the medical records of CTH residents during its statutorily authorized inspections of living conditions in the homes and dismissed P&A's action with prejudice. This appeal followed.

## STANDARD OF REVIEW

■ A suit for declaratory judgment is neither legal nor equitable, and the standard of review for such action is determined by the nature of the underlying issue. *Bundy v. Shirley*, 412 S.C. 292, 301, 772 S.E.2d 163, 168 (2015). "Interpretation of a legislative enactment is a question of law." *Edwards v. State Law Enf't Div.*, 395 S.C. 571, 575, 720 S.E.2d 462, 464 (2011). "In a case raising a novel question of law, [the appellate court] is free to decide the question with no particular deference to the lower court." *Id.*; *see also Sloan v. Greenville Hosp. Sys.*, 388 S.C. 152, 157, 694 S.E.2d 532, 534–35 (2010) (providing statutory interpretation is a question of law for the court, which the appellate court may decide without deference to the trial court).

## LAW/ANALYSIS

■ Pursuant to section 43–33–310, P&A was permanently established as an eleemosynary corporation to exercise protection and advocacy functions for the developmentally disabled and all other handicapped citizens of South Carolina. S.C. Code Ann. § 43–33–310 (2015). An overview of sections 43–33–310 to–400 reveals the powers and duties of P&A as authorized by the General Assembly, including the circumstances

under and manner in which P&A is allowed to carry out those duties. In particular, section 43–33–350 sets forth the powers and duties of P&A, which include in pertinent part as follows:

(1) It shall protect and advocate for the rights of all developmentally disabled persons ... and for the rights of other handicapped persons by pursuing legal, administrative, and other appropriate remedies to insure the protection of the rights of these persons.

(2) It may investigate complaints by or on behalf of any developmentally disabled or handicapped person.

(3) It may establish a priority for the delivery of protection and advocacy services according to the type, severity, and number of handicapping conditions of the person making a complaint or on whose behalf a complaint has been made.

(4) It may conduct team advocacy inspections of a facility providing residence to a developmentally disabled or handicapped person. Inspections must be completed by the system's staff and trained volunteers. *Team advocacy inspections are unannounced visits to review the living conditions of a residential facility, including the plans of care for individuals* in a residential care facility and a community mental health center day program. Only the coordinator of the team advocacy project or the coordinator's designee is authorized to perform reviews of plans of care.

S.C. Code Ann. § 43–33–350 (2015) (emphasis added).

In cases involving written requests to investigate a complaint signed by a resident, his parent, his legal guardian or a state agency, or complaints of abuse or threat of abuse involving circumstances in which the resident is not capable of giving informed consent and does not have a parent or legal guardian to sign a request on his behalf, P&A may take actions including, but not limited to, as follows:

(1) Interview any member of the staff of the program or facility which is providing or did provide treatment, services or habilitation to the person making the complaint or on whose behalf the complaint is made.

(2) Inspect and copy any documents, records, files, books, charts or other writings which are maintained in the regular course of business by the program or facility and which bear

upon the subject matter of the individual complaint, *except for the individual medical, treatment or other personal records of other persons* in the program or facility.

S.C. Code Ann. § 43–33–370 (2015) (emphasis added).

Finally, our statutes require that certain representatives of the state cooperate with P&A in carrying out its duties, including allowing the inspection and copying of any documents provided for in section 43–33–370(2), stating as follows:

All departments, officers, agencies and institutions of the State shall cooperate with [P&A] in carrying out its duties. Notwithstanding any other provision of law, all departments, officers, agencies and institutions of the State may, on the behalf of a developmentally disabled or handicapped person, request [P&A] to provide protection and advocacy services. Notwithstanding any other provision of law, any program or facility shall permit [P&A] to inspect and copy *any record or documents provided for in 43–33–370(2).*

S.C. Code Ann. § 43–33–400 (2015) (emphasis added).

The trial court found P&A is not authorized, pursuant to section 43–33–350(4), to review the medical records—including MARs—of CTH residents during its unannounced inspections. We agree. Specifically, we hold a review of the entire protection and advocacy statutory scheme makes it clear the General Assembly intended not to authorize P&A to review individual medical records in the course of inspecting the living conditions of the residential facilities.

"The cardinal rule of statutory construction is to ascertain and effectuate the legislative intent whenever possible." *Perry v. Bullock,* 409 S.C. 137, 140, 761 S.E.2d 251, 253 (2014) (quoting *State v. Baucom,* 340 S.C. 339, 342, 531 S.E.2d 922, 923 (2000)). "All rules of statutory construction are subservient to the one that legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in light of the intended purpose of the statute." *S.C. Prop. & Cas. Ins. Co. Guar. Ass'n v. Brock,* 410 S.C. 361, 367, 764 S.E.2d 920, 922 (2014) (quoting *McClanahan v. Richland Cty. Council,* 350 S.C. 433, 438, 567 S.E.2d 240, 242 (2002)). "The plain language of a statute is considered the best evidence of the legislature's intent." *Perry,* 409 S.C. at 140, 761 S.E.2d at 253. "When interpreting an undefined

statutory term, the Court must look to its usual and customary meaning." *Id.* at 140–41, 761 S.E.2d at 253.

> In interpreting a statute, [w]ords must be given their plain and ordinary meaning without resort to subtle or forced construction to limit or expand the statute's operation. Further, the statute must be read as a whole and *sections which are a part of the same general statutory law must be construed together and each one given effect.* Accordingly, we read the statute as a whole and should not concentrate on isolated phrases within the statute.

*Centex Int'l, Inc. v. S.C. Dep't of Revenue*, 406 S.C. 132, 139, 750 S.E.2d 65, 69 (2013) (alteration in original) (emphasis added) (citations omitted). "Statutes which are part of the same legislative scheme should be read together." *Great Games, Inc. v. SC Dep't of Revenue*, 339 S.C. 79, 84, 529 S.E.2d 6, 8 (2000). *See also Roche v. Young Bros., Inc., of Florence*, 332 S.C. 75, 81, 504 S.E.2d 311, 314 (1998) ("[S]tatutes are to be construed with reference to the whole system of law of which they form a part."). "When interpreting a statute, courts must presume the legislature did not intend to do a futile act." *State v. Sweat*, 379 S.C. 367, 377, 665 S.E.2d 645, 651 (Ct. App. 2008). "A statute should be so construed that no word, clause, sentence, provision or part shall be rendered surplusage, or superfluous. . . ." *Id.* (quoting *Matter of Decker*, 322 S.C. 215, 219, 471 S.E.2d 462, 463 (1995)). Our courts are constrained to avoid a statutory construction that would have the effect of reading a provision out of a statute. *Steinke v. S.C. Dep't of Labor, Licensing & Regulation*, 336 S.C. 373, 396, 520 S.E.2d 142, 154 (1999). Further, "[i]n construing a statute, this Court is constrained to avoid an absurd result." *Roche*, 332 S.C. at 81, 504 S.E.2d at 314.

Viewing P&A's enabling statutes under these statutory rules of construction, we find it is the clear intent of the General Assembly to exclude medical records—including MARs—from Team Advocacy inspections authorized by section 43-33-350(4). "Plans of care" is an undefined term in the statute. Thus, we must interpret the term in accordance with its usual and customary meaning. *Perry*, 409 S.C. at 140–41, 761 S.E.2d at 253. Additionally, we must construe this statute in reference to other statutes that are part of the same legislative scheme. *Great Games Inc.*, 339 S.C. at 84, 529

S.E.2d at 8; *Roche*, 332 S.C. at 81, 504 S.E.2d at 314. We must read the statute as a whole, and "sections which are a part of the same general statutory law must be construed together and each one given effect." *Centex Int'l, Inc.*, 406 S.C. at 139, 750 S.E.2d at 69. Finally, we must eschew a statutory construction that would have the effect of reading a provision out of a statute, and must also avoid an absurd result in construction of the statute. *Steinke*, 336 S.C. at 396, 520 S.E.2d at 154; *Roche*, 332 S.C. at 81, 504 S.E.2d at 314.

■ We recognize, as P&A stresses, that the purpose behind enactment of the statutory scheme is the protection and advocacy of persons with developmental disabilities and other handicaps. *See Brock*, 410 S.C. at 367, 764 S.E.2d at 922 (2014) ("All rules of statutory construction are subservient to the one that legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in light of the intended purpose of the statute." (quoting *McClanahan v. Richland Cty. Council*, 350 S.C. 433, 438, 567 S.E.2d 240, 242 (2002))). Nonetheless, the means with which P&A has been empowered to achieve that end are not unfettered. Rather, the General Assembly placed limitations on P&A's authority in that regard. Section 43–33–370 explicitly limits the inspection of "individual medical, treatment or other personal records" by P&A to those of a resident upon whose behalf a proper complaint requesting investigation has been received. S.C. Code Ann. § 43–33–370(2) (2015). We are unpersuaded by P&A's assertion that its authority under the Team Advocacy inspection provision is distinct from its authority to investigate complaints such that limitations on its authority to inspect medical records under section 43–33–370(2) should not apply to its authority to review plans of care under section 44–33–350(4). To accept this proposition would render the limitation of inspection of such records in section 44–33–370(2) meaningless and would lead to an absurd result, as P&A could simply announce during an investigation of a complaint pursuant to section 44–33–370 that it was making an unannounced inspection pursuant to section 44–33–350(4), thereby entitling it to review the individual medical records of non-complaining residents—which is explicitly prohibited by section 43–33–370. Thus, we hold section 44–33–350(4), read in conjunction with section 43–33–370(2), evinces a clear intent on

the part of the General Assembly to exclude the right to review the personal medical records of developmentally disabled and handicapped persons from P&A's authority to view documents setting forth the plans of care of these persons during its unannounced inspections of facilities housing them.[4]

While we appreciate the concerns expressed by P&A regarding its ability to protect the State's most vulnerable citizens, we find the legislative intent clear that medical records—including MARs—are to be excluded from review during unannounced team advocacy inspections. As stated by the trial court, while no one would disagree with the worthiness of the broad goals expressed by P&A, these residents—like other citizens—are entitled to a level of privacy in regard to their medical records, and the General Assembly has not deemed it appropriate to make the medical records of the residents in question available for review to P&A during its Team Advocacy inspections. *See Taghivand v. Rite Aid Corp.*, 411 S.C. 240, 244, 768 S.E.2d 385, 387 (2015) (holding the primary source of the declaration of public policy in this state is the General Assembly, and our courts assume this prerogative only in the absence of legislative declaration); *Nationwide Mut. Ins. Co. v. Rhoden*, 398 S.C. 393, 401 n. 4, 728 S.E.2d 477, 481 n. 4 (2012) ("If legislative intent is clear as reflected in the statutory language, any public policy as promulgated by this Court must give way because '[t]he primary source of the declaration of the public policy of the state is the General Assembly[, and] the courts assume this prerogative only in the absence of legislative declaration.'" (alteration in original) (quoting *Citizens' Bank v. Heyward*, 135 S.C. 190, 204, 133 S.E. 709, 713 (1925))). Accordingly, P&A's policy arguments are more properly addressed to the General Assembly.[5]

---

4. We further agree with the trial court that the General Assembly apparently provided for such limited review of medical records under these statutes in recognition of the need for privacy as to medical records on the part of disabled individuals. Additionally, as noted by the trial court, though section 43–33–400 allows the inspection of medical records by P&A, this section specifically limits it to instances in which review is allowed pursuant to section 43–33–370(2).

5. Because we find, based upon analysis of the relevant statutes, it is the clear intent of the General Assembly to exclude from P&A's review individual medical records in the course of inspecting the living condi-

For the foregoing reasons, the order of the trial court is **AFFIRMED.**

KONDUROS and GEATHERS, JJ., concur.

tions of the residential facilities, we need not address the other issues raised on appeal. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not address remaining issues on appeal when its determination of a prior issue is dispositive).