**THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE
CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING
EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA
In The Court of Appeals**

Samantha Joanee Carwile, individually and as the
Personal Representative of the Estate of Marlayna Joan
Carwile, Respondent,

v.

Chris Anderson and Danielle Anderson, Appellants.

Appellate Case No. 2023-001016

———————

Appeal From Darlington County
Paul M. Burch, Circuit Court Judge
Patrick James McLaughlin, Special Referee

———————

Unpublished Opinion No. 2025-UP-165
Heard February 12, 2025 – Filed May 14, 2025

———————

**AFFIRMED IN PART, REVERSED IN PART, AND
REMANDED**

———————

James Bernard Hood, of Hood Law Firm, LLC, of
Charleston; Andrew James MacLeod, of Willson Jones
Carter & Baxley, P.A., of Columbia; and Deborah
Harrison Sheffield, of Columbia, all for Appellants.

David Butler Yarborough, Jr., Douglas Edmund
Jennings, and Reynolds H. Blankenship, Jr., all of
Yarborough Applegate, LLC, of Charleston; Kathleen

Chewning Barnes, of Barnes Law Firm, LLC, of Hampton; and Ryan Christopher Andrews, of Law Office of Ryan C. Andrews LLC, of Charleston, all for Respondent.

––––––––––––––

**PER CURIAM:** This is an appeal in a wrongful death case. Marlayna Joan Carwile was three years old when she tragically died while crossing the road between her neighbors' house and her parents' house in rural Darlington County. Her mother, acting in her individual capacity and as representative of Marlayna's estate, sued the neighbors, the Andersons, alleging they failed to properly supervise the child.

The case comes to us after two entries of default and a default judgment. The first default resulted from the Andersons' failure to respond after being served with the lawsuit. The circuit court set this default aside based on an affidavit explaining the Andersons had promptly notified two insurance companies of the suit and hired private counsel after those companies denied coverage and after notice of the default. The Andersons were permitted to file an answer, but after that, the Andersons and their counsel did virtually nothing to participate in the litigation. They did not respond to discovery requests other than some requests for admission; they did not respond to inquiries from opposing counsel; they did not respond to a motion to compel discovery; and they did not respond to a motion for sanctions. Because of this, the circuit court struck the Andersons' answer, and the Andersons were put in default for a second time.

The case was referred to a special referee. At that point, a new lawyer appeared for the Andersons and requested the second default be set aside. The referee denied the motion, and after a hearing on damages, entered a $30 million default judgment to be split evenly between Marlayna's parents. The referee denied the Andersons' motions to reconsider the default judgment or set it aside.

The Andersons make several arguments on appeal. They contend that the circuit court erred in striking their answer and allowing the second entry of default; the special referee lacked authority to hear this case; the second default should have been set aside; the special referee considered improper evidence in making his damages award; and the damages award is grossly excessive. We affirm on all grounds except the amount of the award. Though we understand and appreciate the difficulty of valuing the incalculable loss in a case like this, we hold that the $30 million default judgment is grossly excessive.

**SECOND DEFAULT AS A SANCTION**

The Andersons argue striking their answer was too harsh of a sanction for not complying with the circuit court's order compelling discovery. This issue is not properly before us because it was not raised in the Andersons' motion to set the second default aside. Although the Andersons raised the argument in their Rule 59(e), SCRCP, motion after the special referee issued an amended default judgment, precedent explains "an issue may not be raised for the first time in a post-trial motion." *S.C. Dep't of Transp. v. First Carolina Corp. of S.C.*, 372 S.C. 295, 301, 641 S.E.2d 903, 907 (2007); *see also Beverly S. v. Kayla R.*, 395 S.C. 399, 401, 718 S.E.2d 224, 225 (Ct. App. 2011) ("An appellate court will not consider an issue that has not been preserved for appellate review.").

**REFERRAL TO THE SPECIAL REFEREE**

The Andersons contend this case was not properly referred to the special referee. It is questionable whether this argument is properly before us. The Andersons did not dispute the referee's authority at the damages hearing and did not raise this argument until posttrial motions filed after the original default judgment. Though this runs afoul of typical error preservation rules, *see S.C. Dep't of Transp.*, 372 S.C. at 301, 641 S.E.2d at 907 ("It is well settled that an issue may not be raised for the first time in a post-trial motion."), we understand the Andersons' argument to be that the order of reference here must be void if a clerk of court lacks authority to sign an order of reference in a default case. *See Turner v. Malone*, 24 S.C. 398, 401 (1886) ("There is no doubt that a void judgment, order, or decree, in whatever tribunal it may be entered, is, in legal effect, nothing.").

Our standard of review is de novo when reviewing questions of law, including those of jurisdiction and statutory or rule interpretation. *Seels v. Smalls*, 437 S.C. 167, 172, 877 S.E.2d 351, 354 (2022). Rule 53(b), SCRCP, provides that the circuit court or the clerk of court may refer a default case to a special referee. The Andersons argue that two statutes—sections 14-11-60 (dealing with special referees) and 14-17-250 (discussing general powers of clerks of court) of the South Carolina Code (2017)—overpower Rule 53(b) and instead require the consent of both parties for a clerk of court to refer a case to a referee. We disagree. *See Roche v. Young Bros., of Florence*, 332 S.C. 75, 81–82, 504 S.E.2d 311, 314 (1998) (reviewing Rule 53 and section 14-11-60 together and holding that a defaulting party's consent is not required for a circuit court to refer a case to a special referee); *see also id.* at 82–83, 504 S.E.2d at 315 ("To hold otherwise would mean that a defaulting party could acquire the right to veto the circuit court's reference authority simply by making

some kind of appearance in the case.  This would be an incongruous result.").  We read *Roche* as controlling the Andersons' argument based on section 14-11-60, the statute dealing with referees.  Although we recognize *Roche* dealt with an order of reference from a circuit court judge, we find the same principles apply when a clerk of court refers a default case.

As for the Andersons' argument based on the statute explaining the general powers of clerks, section 14-17-250, we do not see this statute as restricting a clerk's authority under Rule 53(b), and we will not read these authorities as conflicting with each other unless that reading is unavoidable.  The rule's history and its approval by the General Assembly support this view.  *See* Rule 53, SCRCP (note to 1994 amendment, explaining the amendment directly clarified the clerk of court's authority to enter orders of reference in default cases); *see also* S.C. Code Ann. § 14-3-950 (2017) (providing court rules and amendments must be submitted to the General Assembly and only become effective if they are not rejected by the General Assembly).  We conclude the clerk of court acted as authorized by Rule 53(b) and properly referred this case without the Andersons' consent.

## RELIEF FROM THE SECOND DEFAULT

The Andersons filed a motion seeking relief from the second entry of default shortly before the damages hearing in front of the special referee.  The motion was denied.  The Andersons' first argument on this issue is that the true subject of the motion was the order sanctioning them for not cooperating in discovery because the second default resulted from that order.  The Andersons therefore contend the referee could not properly rule on the motion to set the second default aside without violating the rule that one judge cannot review another judge's findings.  *See State ex rel. Medlock v. Love Shop, Ltd.*, 286 S.C. 486, 488, 334 S.E.2d 528, 529 (Ct. App. 1985) ("It is settled that one circuit judge does not have the power to review, modify, affirm or reverse the findings of another circuit judge.").

We respectfully disagree.  It may be that the rule prohibiting one circuit judge from overruling another could apply to some scenarios involving default and sanctions, but we cannot conclude it applies here.  After all, the Andersons did not even appear at the hearing on the motion for sanctions and made no record whatsoever in the motions and hearings that led to their answer being stricken.  Though it is true that a decision setting the second default aside would have the practical effect of undoing part of the sanctions order, the fact remains seeking relief under Rule 55(c) is different than directly challenging the sanctions order or asking another judge to overrule it.  *See* Rule 55(c), SCRCP (providing the court may set aside an entry of

default if good cause is shown).  The referee in this case was specifically directed to consider "any motions related to the entry of default, including but not limited to motions pursuant to Rule 55, SCRCP."  *See also* Rule 53(c), SCRCP (describing the master or special referee's authority over a matter once referred).  A record justifying relief from the second default would necessarily be vastly different from the record that led the previous judge to impose sanctions.  Consequently, we respectfully reject the argument that the special referee lacked the power to hear the Rule 55(c) motion.

Now that we have concluded the referee acted properly in hearing the motion to set the second default aside, we must address the Andersons' arguments that the referee erred in denying the motion.  "The decision whether to set aside an entry of default or a default judgment lies solely within the sound discretion of the trial judge." *Sullivan v. Richland Cnty. Sch. Dist. One*, 444 S.C. 541, 543, 909 S.E.2d 406, 407 (Ct. App. 2024) (quoting *Stark Truss Co. v. Superior Constr. Corp.*, 360 S.C. 503, 508, 602 S.E.2d 99, 101 (2004)).  "This decision will not be reversed absent an abuse of that discretion[,]" which "occurs when the order was controlled by an error of law or when the order is without evidentiary support."  *Id.* (quoting *Stark Truss Co.*, 360 S.C. at 508, 602 S.E.2d at 101–02).

The special referee did not find good cause to set aside the default, and we cannot disagree given the record before us.  The parties debate if and when Allstate, the Andersons' insurance provider at the time of the incident, found out about this lawsuit.  We suspect that question will be litigated in different proceedings, but even so, the record lacks any explanation whatsoever for why the Andersons and their counsel did nothing in the litigation from July 2021 (when they filed an answer after securing relief from the first default) until April 2023 (when counsel hired by Allstate appeared for the Andersons right before the damages hearing).  *See Sundown Operating Co. v. Intedge Indus., Inc.*, 383 S.C. 601, 607, 681 S.E.2d 885, 888 (2009) ("Th[e] [good cause] standard requires a party seeking relief from an entry of default under Rule 55(c) to provide *an explanation* for the default and give reasons why vacation of the default entry would serve the interests of justice." (emphasis added)).  We see no grounds in this record for reversing the referee's finding of a lack of good cause.

The Andersons' last argument on this issue is that the second default should have been set aside because it is obvious that the lawyer who helped them out of the first default abandoned them after doing so.  This issue was not raised until the reply supporting one of the Andersons' posttrial motions and is therefore not before us. *See S.C. Dep't of Transp.*, 372 S.C. at 301, 641 S.E.2d at 907 ("It is well settled that an issue may not be raised for the first time in a post-trial motion.").  Although we

are at a loss to understand some of what has occurred in this case, there is no record allowing us to evaluate why the Andersons were completely absent from the suit and did not defend the motion to compel or the motion for sanctions filed against them.

**DAMAGES AWARD**

The Andersons argue the special referee's damages award is improper for two reasons. First, they contend the referee based his award on evidence that fell outside the recoverable elements of damages for wrongful death. Second, the Andersons argue the award is grossly excessive.

We do not find sufficient grounds to conclude the special referee based the amount of the judgment on improper elements of damage. The referee's amended judgment extensively discussed the evidence and made clear that all of the challenged evidence was used in determining the extent of the parents' grief, sorrow, mental shock, and suffering, which are all recoverable damages for wrongful death. *See Smith v. Wells*, 258 S.C. 316, 319, 188 S.E.2d 470, 471 (1972) (stating a wrongful death award is not based on "the value of the human life lost, but . . . rather the damages sustained by the beneficiaries from the death"); *id.* (listing damages for wrongful death, which include "mental shock and suffering," "wounded feelings," and "grief and sorrow"); *see also Evatt v. Campbell*, 234 S.C. 1, 11, 106 S.E.2d 447, 452 (1959) (providing in an action at law tried before a special referee or judge, "the findings of fact have the same force and effect as the verdict of a jury"); *Solley v. Navy Fed. Credit Union, Inc.*, 397 S.C. 192, 202, 723 S.E.2d 597, 602 (Ct. App. 2012) ("Questions regarding credibility and weight of evidence are exclusively for the trial court.").

We turn now to the amount of the award. Both parties seem to agree on the general principles for reviewing a wrongful death award: the court views the evidence in the light most favorable to the plaintiff; comparisons to other cases can be useful—and even forceful—but are not necessarily required; and we give great deference to a jury's assessment of damages. *Haselden v. Atl. Coast Line R. Co.*, 214 S.C. 410, 434, 53 S.E.2d 60, 70 (1949); *Lucht v. Youngblood*, 266 S.C. 127, 136, 221 S.E.2d 854, 858 (1976); *Knoke v. S.C. Dep't of Parks, Recreation & Tourism*, 324 S.C. 136, 141, 478 S.E.2d 256, 258 (1996); *see also Mazloom v. Mazloom*, 382 S.C. 307, 320, 675 S.E.2d 746, 753 (Ct. App. 2009) ("If evidence in the record supports the award for actual damages, this [c]ourt will only review the award for errors of law.").

"The delicate question is whether the compensation awarded for these elements is so grossly excessive as to warrant the inference that it was the result of caprice, passion, prejudice[,] or other considerations not founded on the evidence." *Nelson*

*v. Charleston & W. C. Ry. Co.*, 231 S.C. 351, 361, 98 S.E.2d 798, 802 (1957). The test for evaluating a damages award for excessiveness is difficult to articulate with precision but has been summarized in various ways: "shocking to the judicial conscience," "monstrous," "outrageous or extravagant," "[no] margin for a reasonable difference of opinion," or "against the overwhelming weight of the evidence." *Lucht*, 266 S.C. at 138, 221 S.E.2d at 859; *Haselden*, 214 S.C. at 426, 434, 53 S.E.2d at 66, 70 (quoting *Jones v. Atl. Refin. Co.*, 55 F. Supp. 17, 20 (E.D. Pa. 1944)); *Watson v. Paschall*, 100 S.C. 281, 283, 84 S.E. 531, 532 (1915).

After a review of the evidence and record, we hold the $30 million judgment in this case is grossly excessive. Although we understand the intangible damages suffered here cannot be "determined by any fixed measure," *Knoke*, 324 S.C. at 142, 478 S.E.2d at 258–59, and that no amount of money can fully compensate this family for the loss they have suffered, we cannot conclude "there is any margin for a reasonable difference of opinion" in our decision that the $30 million judgment in this case is excessive. *Haselden*, 214 S.C. at 434, 53 S.E.2d at 70 (quoting *Jones*, 55 F. Supp. at 20).

Our decision is bolstered by comparing this judgment to judgments in similar cases. We fully recognize that a comparison analysis is not required and that no two cases are identical. *Lucht*, 266 S.C. at 136, 221 S.E.2d at 858. Even so, and as already acknowledged in this opinion, precedent explains that comparing judgments can be useful when reviewing judgments for excessiveness, *id.*, and several cases in this area have used that approach. *See, e.g., Lucht*, 266 S.C. at 137, 221 S.E.2d at 859; *Haselden*, 214 S.C. at 432–34, 53 S.E.2d at 69–70; *Welch v. Epstein*, 342 S.C. 279, 304–05, 536 S.E.2d 408, 421 (Ct. App. 2000); *Scott v. Porter*, 340 S.C. 158, 169–70, 530 S.E.2d 389, 395 (Ct. App. 2000).

A proper comparison analysis is particularly instructive in this case because the difficult task of valuing these damages was not undertaken by a jury, but fell on the shoulders of one lawyer acting as a special referee. Many of the cases in this area speak of the substantial deference afforded to the jury's assessment of damages. *See, e.g., Lucht*, 266 S.C. at 137–38, 221 S.E.2d at 859. We expect part of the reason for this deference, if not the main reason, is because of the important role the jury plays in the civil justice system. As one prominent case explains, "The assessment of actual damages in a case of grievous and permanent personal injury is a task beset with great difficulty, which the law has entrusted to the judgment and discretion of a jury . . . ." *Mickle v. Blackmon*, 252 S.C. 202, 247, 166 S.E.2d 173, 194 (1969). The record contains a suggestion that a comparison analysis was not useful because so few cases go through a full trial and appeal. As we see it, that point cuts in

precisely the opposite direction.  Settlements are vital to the court system's work, but we think precedent puts a premium on jury verdicts because the value of the intangible damages in this sort of case "cannot be determined by any fixed yardstick" and "must be estimated by the jury in the exercise of their sound judgment under all of the facts and circumstances of the case."  *Lucht*, 266 S.C. at 137, 221 S.E.2d at 859.

Here, then, is our review of similar cases, with the caveat that we acknowledge no two cases are exactly alike.  In *Zorn v. Crawford*, our supreme court found a $250,000 verdict for the wrongful death of fifteen-year-old girl was excessive under the recognition that the loss of a child is not to be minimized but "[t]here must be some semblance of a basis for [the award]."  252 S.C. 127, 136–38, 165 S.E.2d 640, 645–46 (1969).  In *Lucht*, a case involving the wrongful death of an exceptional teenage girl, the trial judge reduced the jury verdict from $168,000 to $110,000 and that reduced judgment was upheld on appeal.  266 S.C. at 137–38, 221 S.E.2d at 859–60.  Twenty years later, our supreme court affirmed a $3 million verdict for the grief, shock, and sense of loss resulting from the death of a twelve-year-old son.  *Knoke*, 324 S.C. at 140–42, 478 S.E.2d at 257–59.  Shortly after *Knoke*, this court affirmed a jury verdict of $1.5 million in actual damages for the wrongful death of a toddler.  *Scott*, 340 at 168–70, 530 S.E.2d at 394–95.

We hasten to add that all of these cases are several decades old.  Precedent counsels that we should consider "the increased cost of living and the impaired purchasing power of money" when comparing past verdicts for similar injuries.  *Cabler v. L. V. Hart, Inc.*, 251 S.C. 576, 581, 164 S.E.2d 574, 577 (1968) (quoting *Haselden*, 214 S.C. at 427, 53 S.E.2d at 67); *see also Lucht*, 266 S.C. at 136, 221 S.E.2d at 858–59.  Throughout this case, the Andersons have proposed that verdicts in comparable cases, accounting for inflation, range from between $230,000 to $6 million.  It does not appear anyone disputes the accuracy of these computations.

The referee answered this argument by pointing to other cases with larger judgments, but even those cases do not alter our conclusion that a judgment of $30 million is grossly excessive in this case.  The $12 million verdict in *Steinke v. Beach Bungee, Inc.*, 105 F.3d 192 (4th Cir. 1997), was reduced to $6 million on remand.  *Steinke v. Player*, 145 F.3d 1325 (4th Cir. 1998) (unpublished table decision).  The $12.5 million verdict in *Jimenez v. Chrysler Corp.* was reduced to $9 million and ultimately vacated as part of an order for a new trial.  74 F. Supp. 2d 548, 578 (D.S.C. 1999), *rev'd in part, vacated in part, and remanded for a new trial*, 269 F.3d 439, 457 (4th Cir. 2001).  The verdict in *Hurd v. United States* was $6 million for each

deceased child.  134 F. Supp. 2d 745 (D.S.C. 2001).  Even when accounting for inflation, the $30 million judgment here vastly exceeds these other figures.

We fully expect the judgment in this case to be substantial, and we note that nothing in this opinion should be taken as suggesting the judgment must fall within the range established by similar cases.  *See Lucht*, 266 S.C. at 138, 221 S.E.2d at 860 (finding an award not excessive even though it was higher than any verdict the supreme court had previously awarded).  However, when we consider the evidence and the fact that the $30 million judgment here is so greatly different from these comparable cases, we can only conclude that this judgment is grossly excessive.  For these reasons, we reverse the judgment and remand the case for additional proceedings consistent with this opinion.

We decline to address any remaining issues.  *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (ruling it unnecessary for an appellate court to address remaining issues when its resolution of a prior issue is dispositive).

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

**THOMAS, KONDUROS, and HEWITT, JJ., concur.**